## Commonwealth *v.* Guinzburg, Appellant.

*Liquor laws—Wholesale dealer—Selling without license—Sale in another county by agent.*

A wholesale liquor dealer may be convicted of selling liquor without a license where it appears that he sent his agent into another county than that covered by his license, that the agent went around from house to house soliciting orders for beer and liquor, that the orders

were given orally, sometimes for no definite quantity and with the general understanding among the purchasers that the liquor was to be delivered at their houses, where it was to be paid for. In such a case it is immaterial that the defendant on receiving the orders set apart the packages, marking them with the names of the several purchasers.

Argued March 1, 1911. Appeal, No. 134, April T., 1911, by defendant, from judgment of Q. S. Jefferson Co., Nov. T., 1910, No. 49, on verdict of guilty in case of Commonwealth v. Frank Guinzburg. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Indictment for selling liquor without a license. Before REED, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Now, gentlemen, you will observe from what has been said that the determining factor in this case is, where was this admitted sale of liquors made? If at the defendant's place of business in Dubois your verdict will be "not guilty." If made at Falls Creek, in this county, it will be "guilty." Whether made at Dubois or at Falls Creek depends upon the contract, express or implied, as made between the parties to the transaction. If the contract contained an agreement on the part of the defendant to deliver the liquors purchased to the purchaser in Falls Creek, and in pursuance thereof they were so delivered, then the sale was made in Falls Creek in violation of law, and in that case your verdict should be one of "guilty as indicted." If it did not contain an agreement to deliver the liquors to the purchaser in Falls Creek, and they were not so delivered, then there would be no violation of law and your verdict should be one of "not guilty."] [2]

[Now, gentlemen, you will understand from what has been said that delivery is an essential element in the sale of personal property; and beer and whisky are personal property. An agreement to sell personal property is not

a completed or executed one until there has been a delivery of the property, either actual or constructive. When one orders goods, either wet or dry, and the seller delivers them to a common carrier consigned to the purchaser the general principle of law applies, that the delivery is made at the place of shipment; that is to say, that the delivery to the carrier is a delivery to the purchaser, and in such cases the carrier becomes the agent of the purchaser, and if the goods are lost or destroyed in the course of transportation the loss falls on the purchaser. In other words, the sale is completed when the delivery is made to the carrier, and the seller has nothing more to do to entitle him to receive or collect from the purchaser his pay for the same.

But this principle of law has no application to a case where the parties have agreed otherwise and where it is made a part of the contract, express or implied, that the seller is to carry the goods to a certain place and there deliver them to the purchaser. In that case the goods are at the risk of the seller until delivery, and if lost or destroyed in the course of transportation or before actual delivery the loss falls on the seller and not on the purchaser. In such cases the sale is not complete until the delivery is made at the place agreed upon other than the place of shipment.] [3]

[The law, however, will not permit itself to be defeated by any trick or subterfuge; and, if necessary, it will look beyond the contract, whether in parol or in writing, as framed by the parties to ascertain and determine the real or true contract between them. And if the evidence warrants a finding that the contract as actually made required a delivery of the liquors by the dealer at a place other than his place of business, and that they were so delivered in pursuance of the contract as actually made, he may be found guilty of selling without a license, notwithstanding the contract as expressed in words or in writing formally provides for a delivery at the defendant's place of business.] [4]

[If the evidence satisfies you beyond a reasonable doubt

that it was the implied understanding and agreement between them that the defendant was to deliver the beer or whisky to the purchaser in Falls Creek, and that he did so deliver it, then you will be warranted in finding the defendant guilty as indicted.   If you have any reasonable doubt about this, you will acquit the defendant.] [5]

Verdict of guilty, upon which the defendant was sentenced to pay a fine of $1,500, and undergo imprisonment for three months in the workhouse.

*Errors assigned* were (2–5) above instructions, **quoting** them.

*A. L. Cole,* with him *C. Z. Gordon, E. A. Carmalt* and *L. E. Boyer,* for appellant.—Under a license to sell liquors a dealer may ship it by a carrier or by his own conveyance directly to customers beyond the county in which he is licensed, on orders received in the regular course of business: Com. v. Hess, 148 Pa. 98; Com. v. Fleming, 130 Pa. 138; Com. v. Munk, 1 Pa. Superior Ct. 479.

*Jesse C. Long,* with him *C. W. Flynn,* for appellee.—It is unlawful for a brewer or wholesaler to sell his product at any other place than at the brewery or at the place where he is licensed to conduct his business: Com. v. Francis, 24 Pa. C. C. Rep. 186; Star Brewing Co.'s License, 43 Pa. Superior Ct. 577; Com. v. Fleming, 130 Pa. 138; Com. v. Guja, 28 Pa. Superior Ct. 58.

In this case it must be conceded that the whole question is one of where were the liquors to be delivered and when did the title pass to the purchaser.   It seems very plain from the testimony that the liquors were to be delivered by the defendant to the purchasers, away from the defendant's place of business.   Then the question arises as to whom the liquors belonged until they arrived at their destination, the house of the purchaser.   Even the defendant does not deny that the liquors were his until the

very moment the purchasers removed same from defendant's wagon in Falls Creek, and had the kegs burst or the liquors destroyed before they arrived at the purchaser's house there is no doubt but this court would say that the defendant should bear the loss and furnish other liquors to the purchasers or refund their money, because the title remained in the defendant and the contract was executory until the very second the liquors came into the hands of the purchasers: Braddock Glass Co. v. Irwin, 153 Pa. 440; Star Brewing Co.'s License, 43 Pa. Superior Ct. 577; McNeal v. Braun, 53 N. J. Law, 617 (23 Atl. Repr. 687); Sneathen v. Grubbs, 88 Pa. 147.

OPINION BY HENDERSON, J., April 17, 1911:

The defendant was convicted of selling liquor without license. His place of business is Dubois, Clearfield county, where he holds a license to sell liquor at wholesale. The sales complained of were made to persons residing in or near Falls Creek in Jefferson county. The defendant employed an agent who visited the houses of people residing there and solicited orders for beer and whisky which were reported by the agent to the defendant. Quantities of liquor corresponding with the amounts ordered were set apart and labeled with the names of the persons who had given orders to the agent, after which they were placed in the defendant's wagon, hauled to the residences of the persons who were to receive them and there delivered. The fact of the sales was not controverted but the appellant contends that the court should have declared as a matter of law that they were not made in Jefferson county. It was urged in the court below and at the argument here that the testimony established a sale and delivery of the liquor at Dubois and that the transactions were in the exercise of the privileges conferred by the defendant's license. It is contended by the commonwealth, on the other hand, that the orders were given, the price paid and the delivery of the property made in Jefferson county; that this delivery was so made by agreement of the defendant with the pur-

chasers and that the sales therefore were made in Jefferson county. The right of the defendant to sell his merchandise is limited by his license to his place of business. He is not forbidden, however, to sell to persons residing without the county if the sales in fact take place at his store and he may sell on orders received in the regular course of business and may send the liquor by public carrier or by his own wagon to the purchasers. And this applies as well to orders obtained without the county through a solicitor where the orders are accepted and filled at the vendor's place of business and his part of the transaction is so far completed that title to the property passes to the purchaser. In such cases the sale is regarded as having been made where the vendor does business, and when he puts the goods in process of transportation his responsibility for the property is terminated. This is the doctrine of Garbracht v. Com., 96 Pa. 449; Com. v. Fleming, 130 Pa. 138; Com. v. Guja, 28 Pa. Superior Ct. 58; Com. v. Tynnauer, 33 Pa. Superior Ct. 604. In all of these cases the shipment was by common carrier and in the first two it was clear that the vendor's relation to the goods was ended when they were delivered to the carrier. There was no agreement express or implied that a part of the contract of sale was that the vendor should deliver the merchandise at its destination. The railroad company, became the agent of the purchaser in carrying the property. Where, however, the sales are made through a solicitor, working in a county other than that for which the dealer is licensed, who takes orders which are subsequently filled, on an agreement as part of the contract of sale that the liquor bought is to be delivered to the purchaser at his residence or place of business it does not follow as a conclusion of law that the mere setting apart of a package or quantity of liquor corresponding with the amount of the buyer's order in the store of the vendor constitutes a sale and delivery at the latter place. Where the vendor through his agent enters into a contract in another county for the sale of liquor and a delivery of the same to the

buyer at his home or place of business the transaction may amount to a sale in that county. In that case the agreement to sell is executory and not completed until the delivery of the goods at the place which the contract stipulated. Such a sale comprises the order taken and the goods delivered at the destination according to the agreement. Delivery actual or constructive is necessary to complete the sale and the manner of delivery is a proper subject of agreement between the buyer and seller: Com. v. Holstine, 132 Pa. 357; Com. v. Guja, 28 Pa. Superior Ct. 58; Star Brewing Co.'s License, 43 Pa. Superior Ct. 577. What is the contract is a question for the jury unless in writing and unambiguous. In Garbracht v. Com., 96 Pa. 449, sales were made on orders obtained by an agent in Mercer county. The dealer had his place of business in the city of Erie. The agent was indicted for selling liquor in Mercer county. The liquor was delivered by the dealer to a railroad company at Erie for transportation to the purchaser, and there was no evidence to connect the agent with the transaction in any other way than that he obtained the orders for the liquor. On that state of facts the court held that the sale was completed in Erie and that the railroad company was the agent of the consignee in carrying the goods. In that connection the court said: "If there had been evidence to show that he (the defendant's agent) delivered any whisky in the latter county or agreed to do so and his agreement was carried out by his principal a different case would be presented, but under the evidence before us there was nothing to justify a jury in so finding." In Com. v. Holstine, 132 Pa. 357, the defendant was employed by one Otto, a licensed bottler, doing business in the city of Philadelphia. It was a part of the agent's business to deliver bottled ale and beer ordered by Otto's customers. He took orders in Montgomery county which he reported to his employer in Philadelphia who filled the orders. The liquor was loaded on the defendant's wagon and delivered by Holstine in Montgomery county. He also collected the money and returned it to his employer.

Of this business the court said: "This was clearly a sale and delivery in Montgomery county. The license held by Otto authorized him to sell in Philadelphia. He had a right to sell to any person in the commonwealth provided the sales were made at his place of business, but he had no right to peddle his beer through other counties not covered by his license and make sales there." The same question was before the court in Com. v. Hess, 148 Pa. 98, in which Com. v. Holstine was reaffirmed and the law restated that a license to a wholesale liquor dealer to carry on business in the city of Philadelphia carried with it the authority to conduct it according to the usual mode of business but did not justify him in peddling his goods around in other counties and selling them there. It was held in this case that the evidence did not justify the conviction of the defendant who was a driver of the licensed dealer, for the orders were sent by Cottman and Wilson, licensed hotel keepers in Montgomery county, to the wholesale dealer's place of business in Philadelphia and the goods were there set apart for the purchasers to whom they were charged. The orders were filled at times by shipment by railroad to the consignees and at other times by delivery on the dealer's wagons. On this agreed state of facts the question was whether there was a sale and delivery as between the vendor and vendee in Philadelphia and the judgment of the court was that the property passed there, regard being had to the manner in which the business was conducted. There was nothing in the facts to support the conclusion that a part of the contract of sale was that the goods would be delivered to the purchasers at their places of business. The act of the wholesale dealer in forwarding the goods at times by his own conveyances rather than by a common carrier made him the bailee of the property in transit, but the title had passed before the shipment. This case the appellant considers to be a decisive authority in support of the request for binding instructions for the defendant, but we do not so regard it. On the contrary, it emphasizes the conclusion in Com. v. Holstine, 132 Pa. 357, and is

based on an established state of facts in important respects unlike those exhibited by the evidence in the case now before us. The orders taken by the defendant's agent were verbal and were obtained by soliciting from house to house. Several of the witnesses were so unfamiliar with the English language that interpreters were required and it distinctly appeared that no formal orders were given. The agent came at regular periods and solicited orders for beer and whisky. The form of the order as shown in some instances was "I want a keg of beer," or "Bring me some beer," whereupon the agent promised to have the beer there the same afternoon or the next day or at such time as it could be delivered. And there is abundant evidence to justify the jury in concluding that the arrangement between the solicitor and the purchasers was that the beer or whisky ordered was to be delivered at the house of the purchaser. Payment was also made there to the agent in some instances at the time the order was given and in other cases at later times when a credit account was settled. One of the witnesses, Christopher, did not know from what source the beer which he ordered was to come. All he knew was that the defendant's agent came to him, he told him what he wanted and the beer was delivered at his house— the place where it was to be delivered—within a day or two. Ross, another witness, whose knowledge of English did not extend much beyond his ability to say "yes, sir" and "beer" said to the agent "want beer," and a short time after the defendant's driver would deliver it to him. Sbionski ordered beer which was to be brought to his house at Falls Creek. Divingo testified to the same state of facts. The evidence of some of the witnesses tends strongly to show that they did not understand that they were buying whisky and beer in Dubois but that they were dealing with the solicitor who was receiving the pay and undertaking to make the deliveries to them at the times and places arranged for. This is a very different mode of doing business from that adopted in the Hess case where there was no solicitation or contracting in Mont-

gomery county and nothing was shown as to the manner of delivery. In the one case the buyers understood that their purchases were completed at the store; in the other, the evidence shows that they understood they were dealing in the place where they lived. The passing of the title in a sale of chattels depends on the intention of the parties to be discovered from the contract and circumstances. Measuring, weighing and setting aside are circumstances only from which the intention may be inferred: Winslow v. Leonard, 24 Pa. 14; Gonser v. Smith, 115 Pa. 452. The marking of the packages in the defendant's store did not conclusively transfer the title there: Com. v. Guja, 28 Pa. Superior Ct. 58. It was a convenient designation for the use of the driver who distributed the bottles and kegs at the houses to which they were to be sent. Whether it was evidence of an actual sale or a facility to aid the defendant in peddling his merchandise in a county into which his license did not reach was under all of the evidence and the circumstances surrounding the business methods adopted by him a question for the consideration of the jury. The case is not distinguishable, in any respect favorable to the defendant, from Com. v. Holstine, 132 Pa. 357. The charge of the court was in harmony with the authorities to which reference has been made. The defendant's position was thus stated by the court: "The defendant's contention is that there was no agreement on his part or on the part of his agent to carry this beer or whisky to Falls Creek and there deliver it to the person ordering the same; that it was to be delivered at the defendant's place of business in Dubois, and that the actual delivery from that point was made by the defendant's driver as the agent of the purchaser and at the purchaser's risk. And if you so find from the evidence, then you will acquit the defendant." And again, "On the other hand, if the agreement, expressed or implied, was that the beer or whisky was to be turned over to the purchaser at the defendant's place of business for delivery—whether by common carrier or otherwise—such transaction would be a sale at the defend-

ant's place of business and as such would be authorized by the license which he holds, and your verdict therefore would be "not guilty" even though the defendant personally or by another, as the agent of the purchaser, may have delivered the beer and whisky to him in Falls Creek." These instructions were consistent with the theory on which the defense was presented, the position taken by the appellant's counsel being that the sale was in Dubois. The portions of the charge excepted to must be read in their appropriate connection and when so viewed the case is clearly and fairly presented to the jury. No witnesses were called for the defense and it was the duty of the trial judge to instruct the jury on the law applicable to the evidence introduced by the commonwealth and in accordance with the adjudications on the subject of executed and executory contracts as applied to transactions of this character. In the light of this evidence the court could not with propriety have said that the sales proved were completed in Clearfield county. The character of the parties with whom the defendant dealt, the manner in which the business was conducted, the place where the arrangement was made between the buyer and seller, the conditions under which the orders were given and the liquor received were all circumstances proper for the consideration of a jury in determining whether the defendant was acting in good faith in the exercise of his rights under his license or whether he was adopting a method to evade the law and enable him to reach a class of customers who would not have gone to his place of business and who were not sufficiently intelligent to send orders to him or to understand that they were dealing directly with him in the purchase of the liquor which they obtained.

The judgment is affirmed and the record remitted to the court below to the end that the sentence be carried into execution.