# Commonwealth *v*. Rossi, Appellant.

*Liquor law—Sale without license—Interstate commerce—Act of May 13, 1887, P. L. 108.*

1. The provisions of the Act of May 13, 1887, P. L. 108, entitled, "An Act to restrain and regulate the sale of vinous and spirituous malt or brewed liquors, or any admixture thereof," are not a direct burden on interstate commerce in intoxicating liquors as regulated by congress in the act commonly known as the Wilson Act, August 8, 1890, 26 Statutes at Large, 313, chap. 728.

2. If a verbal order for liquor is taken in Pennsylvania by a person who owns a liquor establishment located and licensed in Ohio near the

state line, and in pursuance of which order the liquor is afterwards delivered in Pennsylvania by the seller or his agent in the seller's own wagon, and the purchase price of the liquor is afterwards paid to the seller in Pennsylvania, the latter may be convicted of selling liquor without a license in violation of the Pennsylvania law. The fact that the defendant had a license to sell liquors in Ohio is immaterial.

3. As by the Wilson Act the mere solicitation within the state of orders for liquors located outside the state, is rendered subject to regulation by the police power of the state, so also the making of a contract by the acceptance of orders, within the state, is also subject to the exercise of the police power.

Argued Oct. 7, 1912. Appeal, No. 17, April T., 1913, by defendant, from judgment of Q. S. Lawrence Co., March Term, 1912, No. 43, on verdict of guilty in case of Commonwealth v. Tony Rossi. Before RICE, P. J., HENDERSON, MORRISON, ORLADY and PORTER, JJ. Affirmed.

Indictment for selling liquor without a license. Before WILLIAM E. PORTER, P. J.

The opinion of the Superior Court states the facts of the case.

The court charged in part as follows:

[You have heard the testimony of the witnesses in this case. It appears that on or about February 19, 1912, and at divers other times during the last two years, that this defendant has been engaged in running a licensed wholesale or retail liquor establishment at Lowellville, Ohio, and that it has been his practice to come to Hillsville in Lawrence county, Pennsylvania, frequently during that time.

It is contended here by the commonwealth that on February 19, and at divers other times during the past two years, he has taken orders for intoxicating liquors there—spirituous, vinous, malt and brewed liquors and that afterwards the liquors were delivered by him or his agent, and after that was done he made collection for the liquors so sold and delivered. Now, it is not denied by the defendant but he says he has not been engaged in taking orders for liquors in Lawrence county—that he

delivered no liquor in Lawrence county except that for which he receives an order personally at his store. Now then, gentlemen of the jury, the question as to whether or not an order was taken for the liquor that gives rise to this prosecution comes to be a very important one in the testimony. It simply reduces itself to the question as to whether or not this defendant took the order from Mrs. Kleim and you have the testimony of but two witnesses to that transaction.] [1]

[In this case, gentlemen of the jury, it makes no difference whether this defendant has a license to sell liquor or not in Ohio. We are not concerned about that question. He has no license to sell liquors in Lawrence county, Pennsylvania. A sale consists of a demand for or an offer to purchase a commodity, a delivery of that commodity and a payment for it. These are the three elements that constitute a sale. Those three elements enter into the sale of every article whether it be sugar, tea or coffee, hay or intoxicating liquors. There is the demand or offer to purchase, second, the delivery of the matter that is to be sold, and, third, the payment for it. Now, then, was there a demand or an offer to purchase the liquor made in Lawrence county, Pennsylvania? Because, gentlemen, these three items must have occurred or taken place in Lawrence county to justify a conviction. Now, then, was there a demand or offer to purchase made in Lawrence county by Mrs. Kleim? Did she ask the defendant to deliver to her certain liquors? Was there any understanding or agreement between them in Lawrence county looking to the delivery and payment for the liquor? You have the testimony of Mrs. Kleim on the one side as to that, and the testimony of Mr. Rossi on the other. Now, if you find that the offer to purchase was not made in Lawrence county—that instead of being made in Lawrence county it was made at Lowellville, Ohio, then that would be one item which it takes to constitute a sale that is not present in Lawrence county, and it must have occurred in Lawrence county in order

to make it an offense under the statute.    So you will look at this testimony carefully, gentlemen, as to whether or not there was a demand made in this county and whether or not Mrs. Kleim requested this defendant to deliver her liquors at her home in Hillsville.] [2]

[But the real dispute comes as to whether or not the first item or element I have mentioned,—that is, the offer or request for liquor, was made to the defendant in Lawrence County by this prosecuting witness, Mrs. Kleim.] [3]

To this portion of the charge, appellant excepted on the same ground as that set forth in the first assignment of error.

[This proceeding is had, gentlemen, under the act of assembly which provides:

"That if any person who shall hereafter be convicted of selling or offering for sale any vinous, spirituous, malt or brewed liquor, or any admixture thereof without a license shall be sentenced," etc.

So that the act of assembly is plain on its face, and the question that you are to answer is, Did the defendant make a sale of liquor in Lawrence county at the time alleged or within two years prior thereto?    If you are satisfied under the evidence, beyond a reasonable doubt, that he did, then it is your duty to return a verdict of guilty.] [4]

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were (1-4) above instructions, quoting them.

*H. C. McClintock,* of *Young, McClintock & Painter,* for appellant.—The particular sales of liquor herein were transactions of interstate commerce: Louisville & Nashville R. R. Co. v. Cook Brewing Co., 223 U. S. 70; Hopkins v. United States, 171 U. S. 578 (19 Sup. Ct. Repr. 40).

In the negotiation of interstate commerce orders may be solicited in another state for the introduction of goods

therein, and such solicitation will be free from the internal regulations of that state: Robbins v. Shelby County, 120 U. S. 489 (7 Sup. Ct. Repr. 592).

Each transaction of interstate commerce must be treated as a whole, and the police power of the state cannot be made to apply to any one or more of the integral parts of such transactions: Brennan v. Titusville, 153 U. S. 289 (14 Sup. Ct. Repr. 829); Caldwell v. North Carolina, 187 U. S. 622 (23 Sup. Ct. Repr. 229); American Express Co. v. Iowa, 196 U. S. 133 (12 Sup. Ct. Repr. 182); Norfolk & Western R. R. Co. v. Sims, 191 U. S. 441 (24 Sup. Ct. Repr. 151).

The police power is subordinate to the interstate commerce clause of the United States constitution and cannot be exercised upon an interstate shipment of liquor until after delivery to the importer: Bowman v. Ry. Co., 125 U. S. 465 (8 Sup. Ct. Repr. 689, 1062); Rhodes v. Iowa, 170 U. S. 412 (18 Sup. Ct. Repr. 664); Vance v. Vandercook, 170 U. S. 438 (18 Sup. Ct. Repr. 674); Heyman v. Southern Ry. Co., 203 U. S. 270 (27 Sup. Ct. Repr. 104).

*Thomas W. Dickey,* district attorney, for appellee.— The orders were not received in the regular course of business and this transaction was a sale in Pennsylvania and in direct violation of the police power of the state of Pennsylvania as derived under the Act of May 13, 1887, P. L. 108: Commonwealth v. Guinzburg, 46 Pa. Superior Ct. 488; Commonwealth v. Holstine, 132 Pa. 357; Commonwealth v. Guja, 28 Pa. Superior Ct. 58; Star Brewing Company's License, 43 Pa. Superior Ct. 577; Commonwealth v. Zelt, 138 Pa. 615.

If the appellant's position be correct, then a person could take out a license on or near the state line, go into any part of this commonwealth, take verbal orders for any amount of liquor and deliver the same in person or by wagon, collecting the purchase price in this state, thus making sales in Pennsylvania, without any of the police

powers of the state of Pennsylvania being able to regulate, restrain or prohibit him from so doing. This is clearly beyond the power of congress to regulate interstate commerce: Com. v. Paul, 170 Pa. 284; Plumley v. Massachusetts, 155 U. S. 461 (15 Sup. Ct. Repr. 154); Delamater v. South Dakota, 205 U. S. 93 (27 Sup. Ct. Repr. 447).

OPINION BY PORTER, J., April 21, 1913:

The defendant was indicted and convicted, under the provisions of the Act of May 13, 1887, P. L. 108, for selling intoxicating liquors without a license, in the county of Lawrence, Pennsylvania. He admitted at the trial that he had entered into contracts for the sale of such liquors to be delivered at the residences of the purchasers, in Lawrence county, Pennsylvania, but asserted that such contracts had been made in the state of Ohio and had been executed by delivery of the liquors from his store in Ohio to the several purchasers in Pennsylvania. The evidence produced by the commonwealth was such as to warrant a finding that defendant visited the houses of residents of Lawrence county, Pennsylvania, for the purpose of soliciting orders for liquors, and at such residences, in Pennsylvania, received and accepted orders for liquors, to be delivered by the defendant at the residences of the purchasers, in Pennsylvania. The one fact that was in dispute at the trial was whether the orders had been given by the purchasers and accepted by the defendant in Lawrence county, Pennsylvania, or at the store of the defendant, in the state of Ohio. The verdict of the jury was in favor of the commonwealth upon this contention, and determines that the orders for the liquors were given by the purchasers at their residences, in the state of Pennsylvania, and were there accepted by the appellant. The orders thus given and accepted in Pennsylvania constituted the executory contract of sale. All the assignments of error involve the proposition that the state statute, as construed and applied by the court below,

is repugnant to the commerce clause of the constitution of the United States.

The Act of May 13, 1887, P. L. 108, entitled, "An Act to restrain and regulate the sale of vinous and spirituous, malt or brewed liquors or any admixture thereof" was enacted in the exercise of the police power of the commonwealth. As the subject dealt with is intoxicating liquors, the decision of the cause does not require us to determine whether the restraints which the statute imposes would be a direct burden on interstate commerce if generally applied to subjects of such commerce, but only to decide whether such restraints are a direct burden on interstate commerce in intoxicating liquors as regulated by congress in the act commonly known as the Wilson act, 26 Statutes at Large, 313, chap. 728, the text of which reads as follows: "That all fermented, or distilled, or other intoxicating liquors or liquids transported into any state or territory or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such state or territory be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

The executory contracts for the sales of liquors involved in this case were made in the state of Pennsylvania and those contracts provided for the delivery of the liquors by the defendant at the residences of the purchasers, in the state of Pennsylvania. A sale really consists of two separate and distinct elements; first, a contract of sale, which is completed when the offer is made and accepted; and, second, a delivery of the property which may precede, be accompanied by, or follow the payment of the price, as may have been agreed upon between the parties. The sales in this case appear to have been made upon credit, the defendant calling at the residences of his customers,

in Pennsylvania, upon the pay day following the delivery of the goods and there receiving payment. There was no controversy in the court below as to the manner in which the defendant complied with his agreement to deliver the liquors at the residences of his customers. He had a store in the state of Ohio and he there loaded the goods upon his own wagon and, either by himself or his employee, drove across the state line and delivered the goods to the purchasers at their residences in Pennsylvania, as by his contract he had undertaken to do. The contracts were made in Lawrence county, they were to be there executed, and the goods were delivered, as by contract required, in Lawrence county, Pennsylvania. These facts stamp the transactions as sales in the county of Lawrence, state of Pennsylvania: Com. v. Holstine, 132 Pa. 357; Com. v. Guinzburg, 46 Pa. Superior Ct. 488; Norfolk & Western Ry. Co. v. Sims, 191 U. S. 441. Were these sales, notwithstanding the provisions of the Wilson act, exempt from the police power of the state of Pennsylvania, because of the commerce clause of the constitution of the United States?

The fact that the defendant had a license to sell liquors in the state of Ohio is immaterial to the determination of the question here presented, for his right to carry on interstate commerce, by delivering goods in Pennsylvania, could in no manner be made to depend upon his having a license from the state of Ohio. If the trade was such as to be entitled to the protection of the commerce clause of the constitution of the United States, the residences of the parties engaged in the trade is equally immaterial. A resident of Pennsylvania who owns a factory or store in the state of Ohio has the same right to the protection of the commerce clause of the constitution, in disposing of his goods in all states other than Ohio, as that enjoyed by a resident of Ohio. If the business carried on by this defendant was under the shield of the constitution of the United States, then a resident of Pennsylvania could establish a warehouse in the state of Ohio and make the

same sales in Pennsylvania, in the same manner, which this defendant has done, without molestation from this state. Commerce among the several states comprehends intercourse for the purpose of trade in any of its forms, including transportation, purchase, sale and exchange of commodities between the citizens of different states. The purpose of the Wilson act, as a regulation by congress of interstate commerce, was to allow the states, as to intoxicating liquors, when the subject of such commerce, to exert more ample power than could have been exercised before the enactment of the statute, and to extend their authority to such liquors shipped from other states before they became commingled with the mass of other property in the state by sale in the original package. The statute was first construed by the supreme court of the United States in Rhoades v. State of Iowa, 170 U. S. 412. The statute of Iowa considered in that case forbade the transportation of any intoxicating liquors within the state by any common carrier or agent thereof without the performance of certain conditions. The shipment to which it was attempted to apply this statute had originated in the state of Illinois, the goods having been delivered to the carrier in that state for transportation to a consignee in Iowa. It was held that the Wilson act did not subject the intoxicating liquors to the exercise of the police powers of the state during the course of the interstate shipment, but only after a termination of the interstate shipment by delivery to the consignee, and before a resale by him. The distinction between the right to ship goods into the state and the right to sell them was referred to in the following language in the opinion in that case: "Whilst it is true that the right to sell, free from state interference, interstate commerce merchandise was held in Leisy v. Hardin to be an essential incident of interstate commerce, it was yet but an incident, as the contract of sale within a state in its nature was usually subject to the control of the legislative authority of the state. On the other hand, the right to contract for the transportation of merchandise

from one state into or across another involved interstate commerce in its fundamental aspect, and imported in its very essence a relation which necessarily must be governed by laws apart from the laws of the several states, since it embraced a contract which must come under the laws of more than one state." This case has been followed by others holding that goods while in the possession of a common carrier, under a contract for carriage arising outside of the state were not, by the Wilson act, rendered subject to state control until the termination of the interstate shipment by delivery to the consignee: Louisville & Nashville R. R. Co. v. Cook Brewing Co., 223 U. S. 70. These cases against common carriers, transporting goods under a contract which must necessarily be governed by the laws of several states, clearly recognize the distinction between such a contract and that of a mere contract of sale. That the Wilson act did render subject to the police regulations of a state not only contracts for the sale of liquor while still in another state, but even the solicitation of orders for such liquor, which did not even contemplate acceptance within the state, was squarely decided in Delamater v. South Dakota, 205 U. S. 93. In that case it was said: "That act, as we have seen, manifested the conviction of congress that control by the states over the traffic of dealing with liquor within their borders was of such importance that it was wise to adopt a special regulation of interstate commerce on the subject. When, then, for the carrying out of this purpose the regulation expressly provided that intoxicating liquors coming into a state should be as completely under control of a state as if the liquor had been manufactured therein, it would be, we think, a disregard of the purposes of congress to hold that the owner of intoxicating liquors in one state can, by virtue of the commerce clause, go himself or send his agent into such other state, there in defiance of the law of the state, to carry on the business of soliciting proposals for the purchase of intoxicating liquors." In distinguishing this case from those in which the goods had been in

the hands of a common carrier, under an interstate shipment, it was said: "The rulings in the previous cases to the effect that, under the Wilson act, state authority did not extend over liquor shipped from one state into another until arrival and delivery to the consignee at the point of destination, were but a recognition of the fact that congress did not intend, in adopting the Wilson act, even if it lawfully could have done so, to authorize one state to exert its authority in another state by preventing the delivery of liquor embraced by transactions made in such other state. The purpose here relied on is widely different, since it is that, despite the Wilson act, the state of South Dakota was without power to regulate or control the business carried on in South Dakota of soliciting proposals for the purchase of liquors, because the proposals related to liquor, situated in another state. But the business of soliciting proposals in South Dakota was one which that state had a right to regulate, wholly irrespective of when or where it was contemplated the proposals should be accepted or whence the liquor which they embraced was to be shipped."

It being thus established that, by the Wilson act, the mere solicitation within the state of orders for liquors, located outside the state, is rendered subject to regulation by the police power of the state, it necessarily follows that the making of a contract, by the acceptance of orders, within the state is also subject to the exercise of the police power. The solicitation of an order is a mere preliminary to the contract. The authority of the state to thus regulate an incident preliminary to the introduction of the liquor within the state, is based upon its power to regulate the traffic. If it may regulate the solicitation of orders it may also regulate the acceptance of orders and the making of contracts within the state. This defendant entered into a contract, in Pennsylvania, the execution of which necessarily involved a violation of the law of the state, and he executed that contract according to its terms. The decisions involving the rights of common carriers,

of interstate commerce, above referred to, have no application to this case. This defendant never parted with the actual possession of his property, it continued in his personal control down until the moment he delivered it to the purchasers in Pennsylvania, in violation of the law of the state. There was here no bailment for purposes of transportation, no carrier intervened between seller and purchaser, there was no consignee. The liquors were not only the property of the defendant but they were in his actual possession down until the moment he delivered them to the purchasers, in Pennsylvania, and thus completed the sale.

The judgment is affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with that part of the sentence which had not been performed at the time this appeal was made a supersedeas.