## Commonwealth *v.* Coshey, Appellant.

*Liquor laws—Brewing company—Selling without a license.*

A solicitor of orders for a brewing company working in a county other than that for which his employer is licensed, may be convicted of selling liquor without a license, where the evidence shows that the actual delivery of the beer was intended by buyer and seller to be in the county where it was to be consumed, and such delivery was made; and it is immaterial that the purchaser may have signed a written order to the effect that the markings of the package containing the beer and setting it aside at the brewery, was to be regarded by the company and the purchaser as a delivery of the contents of the package in the county where the brewery was situated. The court will construe such an order, where it was not acted upon by either party, as a mere device to evade the law.

Argued May 6, 1914. Appeal, No. 145, April T., 1914, by defendant, from judgment of Q. S. Indiana Co., Dec. Sessions, 1913, No. 83, on verdict of guilty in case of Commonwealth v. Geo. M. Coshey. Before, RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Indictment for selling liquor without a license. Before TELFORD, P. J.

The court charged in part as follows:

[The defendants, James Dunn, George Coshey, A. A. Stickle, D. G. Halferty and Joseph McMasters, are charged in this indictment, which you will have under consideration, in two counts, each count being a charge of selling liquor without a license. The defendants are

employees of the Loyalhanna Brewing Company. This brewing company has a license in the county of Westmoreland, but not in the county of Indiana. However, it is claimed that for the past two years it has been engaged through its employees, the defendants, in taking orders, collecting the price and delivering beer in large quantities in the borough of Blairsville, in the county of Indiana.

Such sales, the commonwealth contends, were unlawful. If unlawful, then the defendants who aided in such unlawful sales, either by taking orders, delivering the beer, or by authorizing or directing such sales, are alike guilty of such violations of law.

By the act of July 30, 1897, distillers and brewers are, "permitted to deliver their product within the county where the license is granted, and all wagons used for the purpose of delivering spirituous, malt, or brewed liquors or any admixture thereof, shall have marked on the side thereof, the name of the licensee, and the number of his license in letters and figures not less than four inches in length."

In reading this clause of the act, we must conclude that if it means anything, it means that a brewing company was thereby permitted to deliver in its own marked wagons within the county of its license, and no place else.] [11]

The court was perhaps wrong in suggesting the name of the Loyalhanna Brewing Company. We generally speak of it in that term. However, the evidence in the case indicates as the counsel suggests, that the Loyalhanna Brewery is the property of the Independent Brewing Company of Pittsburg.

By the decision of the Star Brewing Company's App., reported in 43 Pa. Superior Ct. 577, it was decided that:

"Where a brewing company having a license to sell beer only at its brewery in a certain borough, employs agents in other places to take orders for beer, and agrees

to deliver, or cause to be delivered beer to purchasers at the town or place where the order is given, the contract is executed only when the beer is delivered to the purchaser at the place where the order·was given, and the company in making such a sale, is guilty of selling without a license."

This was a case of deliveries within the county of the license, and declared that the place of delivery was where the order was taken when the vendor agrees to make the delivery.

[If this be true in the county of the license, it should certainly apply to cases such as is raised by the evidence here, where the delivery is made out of the county of the license.] [12] [In the trial of this case certain orders were offered in evidence in the following form:

"For Beer ordered to be delivered by Brewery wagon.

"English.  No. —— —— Independent Brewing Co. of Pittsburg, Sup't. in charge, Loyalhanna Brewery at Latrobe, Westmoreland County, Pa.    Herewith find .........Dollars, for which please furnish me $^1/_4$—$^1/_8$ cases beer.  It is understood that I purchase the beer ordered as above at your brewery and by this order. When this order is accepted by you there is sold to me the contents of the package above specified at your brewery, and when the package is marked for delivery, as hereinafter specified, at your brewery, the contents thereof become my absolute property.  The marking of the package and the setting aside of the same in accordance with this order to be regarded by your company and myself as the delivery of the contents of said package purchased as aforesaid at your brewery.

"Please deliver by your wagon the beer so purchased to me at ...........(Address)."

It seems to us in examining this paper, that the clauses relating to delivery are so inconsistent that they cannot both be applied, and the reasonable construction seems to us to be that which the evidence

seems to indicate was followed, in practice at least, by some of those signing orders and approved by the .company's solicitor, that is, to request verbally a delivery at a particular address in Blairsville, which direction was inserted in the order.] [13]

[As we view the law, the Loyalhanna Brewing Company, has no authority of law to deliver beer in the county of Indiana, by its wagons, marked or unmarked.] [14]

[If it does make such deliveries, the place of delivery in Indiana county is the place of sale, and being unauthorized by the brewing company's license, the sale is in violation of law.] [15] [Even if our construction of this order were incorrect, it would remain a question for the jury, whether in the cases in evidence the persons signing the orders in all cases understood the orders or knew what the orders contained when they were signed. Some of these witnesses used a foreign language. If they were not informed, understanding the contents of the order, they could not be said to have assented to it. And also whether the plan of distribution in evidence by defendants in this case was not an effort to evade the liquor laws, rather than as the defendants' counsel contend, an effort to obey the law in the conduct of the brewery, and to determine this fact, you will consider all the evidence in the case, the circumstances of soliciting and delivery and general plan of distribution.] [16]

[If you find that the defendants, as employees of the Loyalhanna Brewing Company, made deliveries of beer within the borough of Blairsville, in the marked wagons of the brewery, or that Mr. Coshey, solicitor of the company, took orders with knowledge that it was to be so delivered, or that Mr. James Dunn, manager, authorized or directed such deliveries in Indiana county, then you may find the defendants respectively guilty of the offenses charged, namely, sales of intoxicating liquors without a license in Indiana county.] [17]

If you do not find the facts that would justify a

verdict of guilty against anyone, then your verdict will acquit that defendant.

[There is no evidence that Mr. Coshey, the solicitor for orders, ever participated in the delivery of the beer except on one occasion to which Mr. Ferguson testifies and which Mr. Coshey denies.

If you find that he was with the delivery wagon, as he testifies at the time when deliveries were not being made, and not for the purpose of aiding in, or directing delivery, then his presence there could not affect this case.   If, however, you find that he was with the delivery wagon when deliveries were being made, it is for you to determine whether or not he aided by his presence, direction or otherwise in such delivery, and if so, this act on his part, would constitute the sale unlawful, since not only the taking of the order and the payment, but the delivery all then under his direction occurred in the county of Indiana, which constitutes a sale there.] [18]   [Aside from this alleged instance of violation of the law, if the plan of the brewing company's distribution in Blairsville was unlawful, and he knowing the plan and methods of delivery, aided in such distribution by the taking of orders in a prohibited territory, or territory in which his employer had no license to sell, his conduct in aid of a violation of the license law, would justify you in finding him guilty of the charge contained in the indictment.] [19]

There is no evidence that the manager, James Dunn, participated in any act of distribution, except the approval or disapproval of orders called to his attention, the general business being done by employees under him by his direction.

[If, however, you find that illegal sales were made by those under his control and direction who acted under his authority, or that such illegal acts were approved by him, and occurred in pursuance of a plan of sale and distribution agreed upon by the officials of the brewery and put into execution by Mr. Dunn, superin-

tendent, or manager, his connection, with such illegal sales as occurred by or under such plan or authority, would fix his responsibility for the illegal act.] [20]

Three of these defendants, Mr. Halferty, Mr. Mc-Masters, and Mr. Stickle, were drivers of the brewery wagons. They can only be held responsible for such deliveries as the jury find were illegal under the evidence and in which they severally participated.

Verdict and judgment of guilty, upon which judgment of sentence was passed.

George M. Coshey appealed.

*Errors assigned* among others were (11–20) above instructions, quoting them.

*A. M. Neeper,* with him *J. Wood Clark* and *J. W. McFadyen,* for appellant.—It is the undoubted right of parties to a contract for the sale of personal property which is in writing to fix in that contract by the terms thereof the place of delivery and the time and circumstances under which the title to the personal property sought to be sold and purchased passes from the vendor to the vendee as between the parties to the contract: Com. v. Guinzburg, 46 Pa. Superior Ct. 488; Dannemiller v. Kirkpatrick, 201 Pa. 218; L. Werner, etc., Co. v. Ferree, 201 Pa. 405; Dentzel v. Island Association, 229 Pa. 403; Com. v. Hess, 148 Pa. 98; Perlman & Co. v. Sartorious & Co., 162 Pa. 320; Windber Brewing Co.'s License, No. 2, 54 Pa. Superior Ct. 287; Garbarcht v. Com., 96 Pa. 449; Com. v. Munk, 1 Pa. Superior Ct. 479; Com. v. Fleming, 130 Pa. 138; Com. v. Guja, 28 Pa. Superior Ct. 58; Star Brewing Co.'s License, 43 Pa. Superior Ct. 577; Com. v. Rossi, 53 Pa. Superior Ct. 210; Malone v. Lancaster Gas Light Co., 182 Pa. 309–323; Folk v. State Capital Savings, etc., Assn., 214 Pa. 529.

*John H. Pierce,* with him *W. F. Elkin,* for appellee, cited: Com. v. Holstine, 132 Pa. 357.

OPINION BY ORLADY, J., July 15, 1914:

This defendant was an employee of the Independent Brewing Company of Pittsburg, which corporation was the owner of a brewery located at Latrobe, Westmoreland county, the latter corporation plant was known as the Loyalhanna Brewery, and held a brewer's license granted by the court of quarter sessions of that county. The sales involved in this case were made by this defendant in Indiana county. The indictment was drawn under sec. 15, of the Act of May 13, 1887, P. L. 108. The defendant while admitting that the sales were made, contended that they were proper and lawful by virtue of the license held by his employer, as above stated.

The methods adopted by the brewing company in making sales of its product were fully developed on the trial. This defendant was employed, under a carefully prepared contract in writing, of more than 500 words, in which it was stipulated that he was to render services as an order solicitor, as set forth herein. He was specially directed as follows: "You are not permitted and are expressly directed not to do or undertake to do—First—To take any oral orders and money for the sale or delivery of beer from any person. Second—To agree to deliver beer under any circumstances or conditions whatsoever; other employees of the company will attend to the deliveries of beer. You will call the attention of the person from whom you receive the order to the fact, that certain draymen will if he employs them, deliver the beer from the station at which the common carrier or railroad company delivers it, in accordance with the order, to the person giving you the order, as he may direct, providing such person will pay the cost of the drayage from his station to his residence, or point at which he desires the beer ordered to be delivered to him for consumption, and furnish him with a card of such draymen authorizing the drayman to lift the beer at the railroad station and deliver it to the customer in accordance with delivery directions

printed on such card, which is to be mailed or delivered to said drayman."

The order suggested in the written contract by which Coshey was employed, is equally comprehensive and definite. It is directed to the superintendent in charge of Loyalhanna Brewery, at Latrobe, Westmoreland county, the substantial parts being as follows:

"Herewith find $........, for which please furnish me......case beer. It is understood that I purchase the beer ordered as above at your brewery and by this order. When this order is accepted by you there is sold to me the contents of the package above specified at your brewery, and when the package is marked for delivery, as hereinafter specified, at your brewery, the contents thereof become my absolute property. The marking of the package and the setting aside of the same in accordance with this order to be regarded by your company and myself as the delivery of the contents of said package purchased as aforesaid at your brewery. Please deliver by your wagon the beer so purchased by me at ............. The package containing the beer purchased at your brewery as aforesaid remains your property, deliverable to you at the point specified to which the beer is to be consigned; re-delivery of the package to be at your risk and expense. I am of legal age and of temperate habits. The above order is in my language and I understand it. This order constitutes the entire and exclusive contract for the sale of the beer herein mentioned, and shall not be binding on the brewery company until accepted by said company at one of its breweries."

This order was arranged so as to be signed by the purchaser. The necessity for such regulations was apparent, and they were presumably adopted to meet the views of this court in Star Brewery Co.'s License App., 43 Pa. Superior Ct. 577, and Com. v. Guinzburg, 46 Pa. Superior Ct. 488, in which we held, "Where the sales are made through a solicitor, working in a county other than

that for which the dealer is licensed, who takes orders which are subsequently filled on an agreement as part of the contract of sale that the liquor bought is to be delivered to the purchaser at his residence or place of business, it does not follow as a conclusion of law that the mere setting apart of a package or quantity of liquor corresponding with the amount of the buyer's order in the store of the vendor constitutes a sale and delivery at the latter place." Delivery actual or constructive is necessary to complete the sale, and the manner of delivery is a proper subject of agreement between the buyer and seller: Com. v. Holstine, .132 Pa. 357; Com. v. Guja, 28 Pa. Superior Ct. 58. "What is the contract, is a question for the jury unless in writing and unambiguous." See also Com. v. Martin, 49 Pa. Superior Ct. 626; Com. v. Rossi, 53 Pa. Superior Ct. 210.

In regard to the orders given for beer, the trial judge said: "It seems to us in examining this paper (the order) that the clauses relating to delivery are so inconsistent that they cannot both be applied, and the reasonable construction seems to us to be, that which the evidence seems to indicate was followed, in practice at least, by some of those signing orders and approved by the company's solicitor, that is, to request verbally a delivery at a particular address in Blairsville, which direction was inserted in the order."

It is manifest from the evidence that the instructions given to this defendant, as an order solicitor, were not complied with, so that the bona fides of the order, and the means adopted to effect the sale and delivery of the beer were questions of fact to be disposed of by the jury. It is also manifest that the actual delivery of the beer was intended by buyer and seller to be in Blairsville, in Indiana county, where it was to be consumed.

Despite the statement in the order that, "it constitutes the entire and exclusive contract for the sale of the

beer herein mentioned" ·the place of sale and delivery is to be determined by the conduct of the parties to the contract. The writing, is not the contract, but is no more than evidence of . what the parties intended the contract to be. The words used are not controlling, if the parties by their acts contradict or ignore them. If the jury would find that it was a mere trick or artifice to formally comply with the law yet evade it, the words, however pertinent to the subject-matter would not protect an offender. In examining the testimony, we find ample testimony to justify a jury in concluding that the written order had but little force in determining the legal character of the several transactions.

John Lungo, an Italian, who required an interpreter on the trial, received one case of beer each week on orders given by his wife to Coshey. These deliveries followed orders that were signed by his daughter with his name; the. wife paid the money to the solicitor. The beer was ordered by his authority to be delivered at ·his home, but he never signed· an order, read one or had it read to him.

Dan Rodish, examined through an interpreter, testified as follows: "Q. Could you read that paper? A. I saw his name. Q. Did you read it? A. Sometimes I did and sometimes I didn't, I had no time. Q. Did you know what was in it? A. No. Q. Did he read it to you? A. No. Q. Did you sign your name to it? A. Yes, sir. Q. Why did you sign your name to it? A. Because I gave the order for the beer. When I signed my name, I paid him right away, as much as I needed, sometimes five kegs, sometimes ten kegs. Q. Was there anything said about where the beer was to be delivered? A. He told me he would deliver it another day, to my house."

Peter Jackson testified: "Q. Did you read the blanks? A. Portion of it,. I read down as far as, 'Please find enclosed $1.00, for which please send me beer,' whenever I wanted it. I read the whole thing over once or twice,

every time I ordered was by mail. I didn't order beer
in any other way from that brewery. I ordered either
by common paper or blanks."

M. E. Brown signed an order for a case of beer and
some time after ordered another case by phone. "I
supposed by signing the order that I had opened an
account with the brewery. I ordered by phone and it
was delivered to my house. I paid by check direct to
the brewery."

Clarence Ferguson signed an order, and testified as
follows: "Q. What did it say? A. The order means,
when you sign, that it is to be delivered at your house
or place of residence by the brewing company on their
wagon. Q. Did Mr. Coshey tell you it would be de-
livered where you wanted it? A. I asked him if he
would deliver it where I wanted it, and he said, wher-
ever you want it, it shall be left. It was left at my
house where it always was left. Q. Did you always
pay Mr. Coshey when you ordered it? A. Yes, because
he was the only authorized man to pay."

Enrico Forni, through an interpreter, testified, "Q.
Did you read the order? A. I didn't understand the
order. Q. Who read it to you? A. Mr. Coshey. Q.
Did you understand it when it was read to you in the
English language? A. Yes, sir, I did. Not the whole
thing, but I understood quite a bit. Q. What part did
you understand? A. That a man under twenty-one
years of age cannot order any beer."

These quotations from the testimony of a large num-
ber of witnesses indicate the method pursued by the
order solicitor, and the jury might easily find that how-
ever plausible the writings sounded, the actual contract,
and the fact of sale and delivery in Indiana county was
arranged for by the solicitor and purchaser independently
of the written order. As stated by PORTER, J., in Com.
v. Rossi, 53 Pa. Superior Ct. 210, "A sale really con-
sists of two separate and distinct elements; first, a con-
tract of sale which is completed when the offer is made

and accepted, and second, a delivery of the property which may precede, be accompanied by, or follow the payment of the price, as may have been agreed upon between the parties. The passing of the title in a sale of chattels depends on the intention of the parties to be discovered from the contract and circumstances." Under the testimony adduced on this trial, very much, if not all of the formal averments in the writings were not considered by the parties as having any bearing on the contract. The orders were not read, and if formally signed, the explicit provisions were ignored. The technical declarations in regard to marking of the package to indicate the passing of title at the brewery, and delivery by common carrier as the absolute and specific property of the purchaser might have considerable weight under ordinary circumstances, but in the case of prosecution of the seller for violation of our liquor laws, these refinements in definition are rightly examined with special care to ascertain whether they are made to literally comply with our statutes or are an ingenious device to evade them. As said by Chief Justice PAXSON, in Com. v. Holstine, 132 Pa. 357, with reference to the Act of May 13, 1887, P. L. 108, "The devices to evade it are so numerous and so adroit, and the consequences of its violation are so serious to the welfare and good order of the community generally, that we think it the duty of the courts to enforce the law rigidly. It is needed that all who engage in this traffic in violation of law should know that the way of the transgressor is hard." The acts of assembly quoted are intended to regulate and restrain such sales, which are permitted only when every statutory requirement is complied with. The sales having been made out of the county in which the brewery was licensed it was necessary to show that the delivery of each package had been completed at the brewery, and the intention of the parties is to be collected not from detached parts of the writings, but from the whole transaction, with its attendant circumstances. The words of the second paragraph

of the order declare that the markings of the package and setting it aside is to be regarded by the company and purchaser as a delivery of the contents of the package at the brewery at Latrobe, Westmoreland county. The significance of the third paragraph is apparent, as qualifying or contradicting it, viz.: "Please deliver by your wagon the beer so purchased to me at 62 Liberty St.; 28 Brown St.; 130 Market St.; 258 E. Market St.; 214 Market St., and, etc., in Blairsville, Indiana county."

The court rightly charged the jury that the Loyalhanna Brewing Company had no authority in law to deliver beer in Indiana county, by its wagons, marked or unmarked. If it does make such deliveries, the place of delivery in Indiana county is the place of sale, and being unauthorized by the brewing company's license, the sale is in violation of law.

The case was fully tried and the law applicable to the disputed facts was adequately presented to the jury. The assignments of error are overruled, the judgment is affirmed, and it is ordered that the defendant appear in the court below at such time as he may be called, and be by that court committed until he has complied with the sentence imposed.