## Star Brewing Company's License.

*Liquor   law—Appeals—Certiorari—Facts—Review—Sales—Brewer's license.*

1. On a writ of certiorari to the refusal of the lower court to grant a brewer's license, the appellate court will accept as established the facts as stated by the court below.

2. Where a brewing company having a license to sell beer only at its brewery in a certain borough, employs agents in other places to take orders for beer, and agrees to deliver, or cause to be delivered beer to purchasers at the town or place where the order is given, the contract is executed only when the beer is delivered to the purchaser at the place where the order was given, and the company in making such a sale, is guilty of selling liquor without a license; and for such action in the past the court may refuse to the company a license to sell beer in the future.

Argued April 19, 1910.   Appeal, No. 173, April T., 1910, by the Star Brewing Company; from order of Q. S. Washington Co., Nov. T., 1909, No. 11, refusing application for a brewer's license of the Star Brewing Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Application for brewer's license.   MCILVAINE, P. J., made the following order:

And now, February 25, 1910, it appearing to the court that the said Star Brewing Company has had a license similar to the one applied for, for the year commencing May 1, 1909, and that under that license it employed agents on a monthly salary, who were located at Canonsburg, Westland, Houston, Cherry Valley, Burgettstown, Avella, Manifold, and many other places in the county separate and distant from the brewery, to solicit trade; that said agents at the places where located contracted to sell or took orders for beer and accepted the price of said beer from the purchasers or persons ordering the same, and there agreed for the Star Brewing Company that it would deliver or cause to be delivered said beer to said

VOL. XLIII—37

purchaser at the town or place where the order was given in a cask or bottles which were to remain the property of the said brewing company and to be retaken by it after the beer contained therein was consumed; that the said agents transmitted the money received by them respectively from each of the persons giving them the orders with their respective names and the number or description of the house or place at which the beer of each purchaser was to be delivered; that the said Star Brewing Company, without knowing anything about the character, age or habits of the persons whose names were sent to it as having ordered beer, set apart at its brewery casks and cases to fill said orders and tacked a card on each package, on which was written the name of the person and the place where the beer was to be delivered; that those packages were delivered to the Ben Reynolds Express Company, a corporation whose business it was to transport packages, and said express company, under a contract or traffic arrangement it had with the said Star Brewing Company, delivered the beer to the purchasers at the town or place or coal works where they gave the order and paid the money to the agent, and after the beer was consumed collected and returned "the empties" to the said Star Brewing Company; and it appearing further that this applicant has heretofore been warned by this court that this manner of business was the cause of disorder and complaint and amounted to a sale of its products at places other than at the place licensed; and the court, being of opinion, after due consideration of the evidence, that it would be a wise and proper exercise of the discretion vested in it so to do, orders, adjudges and decrees that the license herein applied for by the said Star Brewing Company be and the same is hereby refused.

*Error assigned* was the order of the court.

*T. F. Birch*, for appellant.—Where the only reason assigned for the refusal of the license is not a valid one un-

der the statute, and there is no other ground for refusing it, the license should be granted: Gemas's License, 169 Pa. 43; Johnson's License, 156 Pa. 322; Gross's License, 161 Pa. 344; Mead's License, 161 Pa. 375; American Brewing Co.'s License, 161 Pa. 378; Knoblauch's License, 28 Pa. Superior Ct. 323; DeHaven's License, 31 Pa. Superior Ct. 335.

The court erred in holding that the sales in this case on orders solicited by the agents "amounted to a sale of its products at places other than at the place licensed:" Garbracht v. Com., 96 Pa. 449; Shriver v. Pittsburg, 66 Pa. 446; Com. v. Fleming, 130 Pa. 138; Com. v. Hess, 148 Pa. 98; Com. v. Munk, 1 Pa. Superior Ct. 479; Com. v. Guja, 28 Pa. Superior Ct. 58; Com. v. Pollak, 33 Pa. Superior Ct. 600.

*J. R. McCreight*, with him *E. S. Marriner, H. D. Hamilton* and *R. W. Knox*, for appellee.—The Star Brewing Company of Washington, Pa., under its contract assumed the burden of delivery of the beer, and the contract was not complete when the beer was delivered to the common carrier but was complete when the beer had been placed in the hands of the purchaser: Com. v. Pollak, 33 Pa. Superior Ct. 600; Com. v. Tynnauer, 33 Pa. Superior Ct. 604; Com. v. Hecirrionic, 39 Pa. Superior Ct. 510.

There is nothing in this case to distinguish it in a material way from Black Diamond Distilling Co.'s License, 33 Pa. Superior Ct. 649; Reynoldsville Distilling Co.'s License, 34 Pa. Superior Ct. 269, and American Brewing Co.'s License, 161 Pa. 378.

OPINION BY HEAD, J., July 20, 1910:

The appellant plants its case upon the single proposition that from the undisputed facts as found by the learned judge below he drew an erroneous legal conclusion, and hence refused its application for a brewers' license.

We have before us but a common-law writ of certiorari. We must, therefore, accept as established the facts as

stated by the learned judge below in the decree appealed from; especially so where, as here, the learned counsel for appellant concedes in his printed brief the absence of any dispute as to the facts. This is his language: "There is no conflict of testimony nor findings of the court on disputed questions of fact to be investigated."

As we view the case, the controlling facts are all contained in the following brief summary: The brewing company, the appellant, having a license to sell only at its brewery in the borough of Washington, employed agents at other places in the county to solicit trade; "that said agents, at the places where located, contracted to sell or take orders for beer and accepted the price of said beer from the purchasers ordering the same, and there agreed for the Star Brewing Company that it would deliver or cause to be delivered said beer to said purchaser, at the town or place where the order was given," etc.

It is not necessary at this late day that we should discuss at length the fundamental principles that become operative in cases of sales of personal property. An executory contract of sale does not become an executed one until there has been a delivery, actual or constructive, because delivery is an essential element in the sale of personal property. The time, the place, the manner of delivery, just like the purchase price, the time and mode of its payment, are matters of contract between buyer and seller. Where the contract, in so far as it has been expressed in words, is silent on the subject of delivery, then the courts must resort to certain rules of construction, to the acts of the parties, and to such other evidence as may be available in order to ascertain the intention and meaning of the contracting parties as to this essential matter.

Many cases have thus arisen in which the courts have declared, for instance, the general principle that a delivery of personal property by a vendor to a common carrier, consigned to the vendee at a distant place, is a delivery to the vendee at the point of shipment, and the common

carrier is the agent of the vendee. In such cases it is needless to add that the vendor parts with his title the moment he delivers the goods to the carrier, and if lost or destroyed during carriage, the loss must fall on the vendee. But in no reported case or in no statement of text-book law that has been brought to our notice has it ever been declared that such a principle would apply to cases where the parties by their contract had stipulated otherwise. But a few citations from the many authorities on this subject will suffice.

In Braddock Glass Co. v. Irwin & Co., 153 Pa. 440, Mr. Justice STERRETT, in reversing the court below, used the following language: "This instruction ignores the recognized principle that where goods are to be carried by the vendor to a certain place and there delivered to the vendee, the carrier is the agent of the former and not of the latter; and that the vendor is responsible for the negligence or misconduct of his agent: McNeal v. Braun, 53 N. J. Law, 617; Sneathen v. Grubbs, 88 Pa. 147; Scott v. Wells, 6 W. & S. 357; Benj. on Sales (1883), sec. 1040. In the latter, the learned author, after referring to the general principle, that, where the vendor is bound to send the goods to the purchaser, delivery to a common carrier is a delivery to the purchaser, etc., proceeds to say: 'If, however, the vendor should sell goods, undertaking to make the delivery himself at a distant place, thus assuming the risks of the carriage, the carrier is the vendor's agent.' "

In Dannemiller v. Kirkpatrick, 201 Pa. 218, Mr. Justice MESTREZAT said: "If a vendor agrees to deliver at a certain place, the property is at his risk until it is so delivered" (cases cited). After showing that the contract between the parties in that case was not so clear on the subject of delivery as to enable the court to determine, as a question of law, the manner in which delivery was intended to be made, the learned justice proceeds: "It is well settled that in the absence of an agreement to the contrary, when a vendor sells goods to a vendee residing

at a distance, a delivery of the goods to a carrier for transportation is a delivery to the purchaser. . . . This rule, however, does not obtain where the parties have otherwise stipulated in their agreement. . . . It, therefore, becomes a question in cases of this character as to where the delivery of the goods is to be made and when the title is to pass to the purchaser. If the facts are not in dispute it is a question of law for the court, but if the evidence is conflicting the question must be determined by a jury" (cases cited). Further discussion of the legal principles involved in this case would be unavailing.

If then there can be no dispute as to the two principles, one or other of which must be applied according as the contract expressly determines or is silent as to the place of delivery, can there be any doubt, in the light of the facts in this case, as they are stated by the learned judge below, which principle must be applied? We again quote from his statement: "That said agents, at the places where located (away from the borough of Washington), there agreed for the Star Brewing Company, that it would deliver or cause to be delivered said beer to said purchasers, at the town or place where the order was given." This language is so plain that it needs no construction. It construes itself, and, to our minds, establishes beyond question a contractual undertaking on the part of the vendor to deliver the goods to the purchaser at the place where the order was given. Until such delivery was made the contract remained executory.

We need only add that upon inspection of the record we are all of the opinion that the learned court below committed no reversible error.

The order or decree is affirmed and the appeal dismissed at the costs of the appellant.