## Commonwealth *v.* Hull, Appellant.

*Liquor law—Selling liquor without a license—Sale by agent—Brewing company.*

Where an agent of a brewing company goes into a county in which his employer has no right to sell liquor, and there makes a contract to deliver the goods in the place where the order is taken, and the order is accepted by the principal and executed according to its terms by delivery in the prohibited place, both the principal and his agent are guilty of selling liquor without a license; and in such a case it is immaterial that the defendant did not himself make the delivery, and that he had no personal interest in the liquors involved in the sale.

The making by an agent of an executory contract for the sale of liquors to be delivered in the future within a prohibited district becomes an indictable offense the moment the contract is consummated by the delivery of the liquor, whether such delivery is made by the agent or his employer.

*Liquor laws—Sale without license—Interstate commerce.*

Where a brewing company licensed in Pennsylvania sends beer to a branch establishment in another state, and from this branch delivers beer to customers in a county in Pennsylvania over which its license does not extend, such sale is not protected as interstate commerce, if it appears that it was consummated after the passage of the Act of Congress of March 1, 1913, c. 90, 37 Stat. 699, entitled "An Act divesting intoxicating liquors of their interstate character in certain cases."

*Liquor laws—Selling liquors without a license—Conviction on defendant's own testimony—Reasonable doubt.*

On the trial of an indictment for selling liquors without a license, it is reversible error for the court to charge that "if you believe the defendant's own testimony as he gave it on the stand, it will be your duty to convict him," if it does not appear that the testimony

of the defendant, if true, established every fact essential to warrant a conviction.

In such a case it is also reversible error to refuse to affirm a point requesting an instruction to the effect "that defendant is entitled to the benefit of any reasonable doubt arising out of the evidence," where the court in its general charge gives no instruction to the jury upon the question of reasonable doubt.

Argued Oct. 4, 1916. Appeal, No. 41, April T., 1917, by defendant, from judgment of Q. S. Somerset Co., Feb. T., 1916, No. 18, on verdict of guilty in case of Commonwealth v. B. W. Hull. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Indictment for selling liquor without a license.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* were instructions set forth in the opinion of the Superior Court.

*A. M. Neeper,* with him *John W. McFadyen, J. A. Berkey* and *C. L. Shaver,* for appellant.—A licensed liquor dealer has a right to solicit orders both within and without the county wherein his licensed premises are situated: Commonwealth v. Guinzburg, 46 Pa. Superior Ct. 488; Commonwealth v. Munk et al., 1 Pa. Superior Ct. 479; Commonwealth v. Fleming, 130 Pa. 138; Commonwealth v. Hess, 148 Pa. 98.

Such licensed liquor dealer may deliver liquors sold by him in any part of the Commonwealth provided the sale of the same is completed upon his licensed premises: Rossi v. Pennsylvania, 238 U. S. 62; Kirmeyer v. Kansas, 236 U. S. 568.

*Virgil R. Saylor,* District Attorney, with him *Ross R.*

452 COMMONWEALTH *v.* HULL, Appellant.

*Scott,* for appellee, cited: Garbracht v. Com., 96 Pa. 449; Com. v. Tynnauer, 33 Pa. Superior Ct. 604; Commonwealth v. Fleming, 130 Pa. 138; Commonwealth v. Holstine, 132 Pa. 357; Commonwealth v. Hess, 148 Pa. 398; Winslow, Lanier & Co. v. Leonard, 24 Pa. 14; Star Brewing Co.'s License, 43 Pa. Superior Ct. 577.

Opinion by Porter, J., March 9, 1917:

The indictment in this case charged that the defendant, "unlawfully did sell and offer for sale vinous, spirituous, malt and brewed liquors and admixtures thereof, without having first obtained a license agreeably to law." This indictment was founded upon the Act of May 13, 1887, Sec. 15, P. L. 113, which declares: "Any person who shall hereafter be convicted of selling or offering for sale any vinous, spirituous, malt or brewed liquors, or any admixture thereof, without a license, shall be sentenced, &c." At the trial the jury returned a verdict of guilty as indicted, upon which verdict the court sentenced the defendant, who now appeals.

The assignments of error are numerous, but the statement, in the brief of appellant, of the questions involved renders it unnecessary to answer in detail the specifications of error. The appellant was an employee of a brewing company, a Pennsylvania corporation, carrying on its principal business in this State. The brewing company established a branch at Cumberland, Md., at which place it maintained a warehouse in which it kept a stock of beer which had been shipped from the State of Pennsylvania. This establishment was known as the Cumberland Branch and was duly licensed by the State of Maryland to sell malt and brewed liquors. Neither the appellant nor his employer had any license which authorized them to sell beer or other liquors in the County of Somerset, Pennsylvania. The appellant was employed by the manager of the Cumberland, Md., Branch of the brewing company, to solicit orders from residents of Somerset County, Pennsylvania. The trans-

actions which resulted in the sales here involved all originated in orders for beer given to the defendant at the Town of Jenners, in Somerset County, where mining operations were carried on and the boarding houses were known by numbers.   The beer which filled the orders came from the Cumberland Branch of the brewing company, in the State of Maryland.   The questions involved may be thus summarized:  (1) Was the evidence sufficient to warrant a conviction of selling or offering for sale liquors, in the County of Somerset, in violation of the laws of the State of Pennsylvania?   (2) Were the sales interstate commerce of such a character, as under the regulations established by the acts of congress, are exempt from the operation of the laws of Pennsylvania? And (3) Were the instructions of the court to the jury erroneous?

The Commonwealth produced evidence sufficient to warrant a finding that when the defendant secured a customer he usually, but not always, had the purchaser sign an order upon a printed form, with blank spaces which were filled up, indicating the liquors desired.   The following copy of one of the complete signed orders is similar to the others which were offered in evidence except as to the name of the party and the character of the goods ordered:

"Town,            Jenners            Nov. 1, 1915.

INDEPENDENT BREWING COMPANY, OF
PITTSBURGH.

(Cumberland Branch), Cumberland, Md.

"Gentlemen:—

"Please ship to me as follows:                    146
     1-2          1-4          1-8          Cases
                                        1     Beer
                                              Porter

"I hereby certify that I am over twenty-one years of

age, and am not a person of intemperate habits, and that
the goods as ordered are wanted for family use.

"JOSEPH BRENKUS, Purchaser.

"This order is taken subject to the approval and ac-
ceptance of the Brewery, (Cumberland Branch) Cum-
berland, Md.                    B. W., Agent."

The person giving the order paid the purchase-price
of the liquors when the order was given.    There was evi-
dence that on at least one occasion the defendant took
an oral order for beer and received the purchase-price,
and the testimony as to that transaction did not involve
the conditions set forth in the above quoted printed
order.    Every one of the witnesses who had ordered beer
of this defendant testified that at the time the order was
given and the money paid for the beer, the defendant had
contracted orally that the beer should be delivered at
their respective residences, or boarding houses at Jen-
ners.    The figures "146," on the above quoted order, rep-
resented the number of the boarding house at which the
purchaser, Brenkus, was living.    Brenkus subsequently
moved to another boarding house and the number on the
order which he then gave was changed to that of his new
boarding house.    This last incident was testified to not
only by Brenkus, but by the defendant.    The Common-
wealth also produced testimony which, if believed, estab-
lished that the beer which had been ordered was subse-
quently delivered at the respective residences of the pur-
chasers; that upon most of the packages the shipping tag
showed that the packages had not been consigned, during
the railroad transportation, to the purchasers of the liq-
uors, and that in no case had the liquors been shipped
to the Town of Jenners, the packages had been carried
by the railroad company to Boswell or Acosta, and had
been from those places taken to the residence of the
purchasers of the liquor by a man named Hay.    William
Meise, the manager of the Cumberland Branch of the
brewing company, who was called on behalf of the de-
fendant, testified that, when an order for liquors and the

money to pay for the goods were received through the defendant, the goods to fill the order were taken out of the stock in the warehouse at Cumberland, Md., and the package there marked with a tag containing the name of the purchaser, as the consignee, and that the package was then taken to the Baltimore and Ohio Railroad Company and shipped. He also testified, however, that the goods were shipped to Boswell or Acosta, and that he, as the representative of the brewing company, employed the man Hay to haul the goods from the point to which they were taken by the railroad company and deliver them at the residences of the purchasers in Jenners, and that he paid Hay for that work fifty cents an hour. This testimony tended to corroborate that of the witnesses for the Commonwealth who said that the delivery was to be at their residences in Jenners, for it established that the brewing company had so construed the contract and had actually made a physical delivery of the property at the residences in Jenners, through its own employee, after the carriage by the railroad company had been completed. The defendant testified in his own behalf and denied that he had made any agreement with any person to have beer delivered at Jenners or elsewhere in the County of Somerset. He testified that he made no agreement outside of taking the written order and that he never made any sale without a written order.

It was contended in the court below that, as to the sales made upon printed and written orders, it was not competent to show that the defendant had agreed that the liquors should be delivered at Jenners, in Somerset County, for the reason that it involved a contradiction or modification of the written agreement. We are of opinion that this position was, for several reasons, not well taken. The orders, partly printed and partly written, even after they were accepted by the employer of the defendant, did not in themselves constitute a complete contract; they did not even fix the price to be paid for the goods, they did not contain a promise to pay any

price, although it would properly be inferred that the purchaser would pay what the goods were worth. The order did not say anything about where the goods were to be delivered. It did not, therefore, contradict or vary the terms of the order to show that there was a contemporaneous parol agreement that the goods should be delivered at a particular place, nor to show that the price to be paid for a case of beer was one dollar. Such testimony merely explained those things which the orders left open for explanation. It was, moreover, competent for the Commonwealth to introduce evidence contradicting the written order, for an entirely different reason, the Commonwealth was not a party to the agreement, it was not attempting to found any right upon the covenants of the written agreement, and it was not bound by the terms of the written agreement. It would have been entirely competent for the Commonwealth to show, in case there had been any necessity for it, that the written agreement had been purposely prepared by the parties to indicate that they intended to do one thing while at the very time they intended to do another and entirely different thing. The evidence tending to show that the appellant had contracted, with the purchasers, that the liquor should be delivered in Somerset County was properly admitted. It was also contended, and that contention seems to be the foundation of some of the specifications of error in this appeal, that if this defendant did not himself, personally, deliver beer in Somerset County, and if the beer was not shipped into Somerset County in such a way as to be subject to the personal control of the defendant, after its arrival in Somerset County, the defendant should be acquitted. This contention is without merit. The offense with which the defendant was charged was a misdemeanor; in misdemeanors there are no accessories before the fact, all who aid, assist or in any way procure the unlawful act to be done may be tried and convicted as principals. When an agent of a liquor dealer goes into a county in which his employer has no right to sell

liquor and there makes a contract to deliver the goods in the place where the order is taken and the order is accepted by the principal and executed according to its terms, by delivery in the prohibited place, both the principal and his agent are guilty of selling liquor without a license; it was so decided by the Supreme Court in Garbracht v. The Commonwealth, 1st Pennypacker 471.

The fact that the defendant did not himself make the delivery did not exempt him from liability if he had made a contract which was illegal and which his principal proceeded to consummate.    The defendant was the agent of a corporation, if he exceeded the powers conferred upon him by the corporation that might exempt his principal from liability but it could not excuse the agent for his own criminal acts.    The fact that the defendant did not have any personal interest in the liquors involved in the sales could have no effect whatever upon the question of his liability for violations of law.    He was paid a salary, but the payment of a salary by a corporation does not authorize a man to violate the laws of the State.    The barkeeper of a tippling-house may have no interest whatever in the liquor which he dispenses but if he sells the liquor for another, who has no license, he is guilty of selling liquor without a license, without regard to whether he receives a mere salary as compensation, or renders service gratuitously.    This disposes of the questions raised by the specifications of error which are merely incidental to the consideration of the three questions hereinbefore stated to be involved.

Was there sufficient evidence to convict the defendant of violation of the laws of the State of Pennsylvania? It is admitted that neither the appellant nor his employer had a license to sell liquors in the County of Somerset, Pennsylvania.    The question, therefore, is, did he sell or assist or procure others to sell liquors in the County of Somerset?    We have said in referring to the testimony that it was sufficient to warrant a finding that this defendant had contracted to sell liquors, to be de-

livered at the residences of the purchasers in Somerset County. The making of an executory contract to sell liquor without a license is not of itself a completed indictable offense in the State of Pennsylvania. The delivery of the liquor consummates the transaction. There may have been a conflict of evidence as to whether this defendant made the contract, and whether the contract was consummated by his principal by delivery of the goods in Somerset County, but that conflict was one which would have to be settled by the jury. The contention of the appellant is that the question ought not to have been submitted to the jury, that the court should have declared as matter of law that the place of delivery was Cumberland, Md. The question thus presented is strikingly similar to that which was considered by this court in Star Brewing Company's License, 43 Pa. Superior Ct. 577. In that case the agents of the brewing company were located at places away from the Borough of Washington, where the brewery was located, and there agreed, for the Star Brewing Co., that it would deliver or cause to be delivered said beer to said purchasers at the town or place where the order was given; and the Star Brewing Co. consummated the contracts by delivering the beer. In dealing with this state of facts, our Brother HEAD, who spoke for the court, said: "This language is so plain that it needs no construction. It construes itself, and, to our minds, establishes beyond question a contractual undertaking on the part of the vendor to deliver the goods to the purchaser at the place where the order was given. Until such delivery was made the contract remained executory." It is pertinent here to note that the deliveries of liquor, involved in that case, were made by the Star Brewing Co. through a common carrier, and it was held that the carrier was the agent of the vendor, in making the deliveries. That decision was followed by this court in Commonwealth v. Guinzburg, 46 Pa. Superior Ct. 488. Those decisions did not announce any new doctrine. They merely accepted the

logical results of the decision of the Supreme Court of
the State in Commonwealth v. Holstine, 132 Pa. 357.
There can be no doubt that, a contract to sell and deliver
liquors in a county in which the party has no license to
sell, and a subsequent delivery within that county pur-
suant to the terms of the contract, is a sale of liquor in
that county and a violation of the law of the State of
Pennsylvania.

The appellant contends that his participation in the
sales, under the evidence, involved no violation of the
law of Pennsylvania, for the reason that his active per-
sonal participation in the transactions consisted only in
the making of executory contracts for the future delivery
of the liquors.  A sale really consists of two distinct ele-
ments:  First, a contract of sale, which is completed when
the offer is made and accepted; and, second, a delivery
of the property pursuant to the provisions of the con-
tract, but each of these elements constitutes a part of the
transaction when consummated.  The contract is execu-
tory, until consummated by delivery of the goods.  An
executory contract for the sale of liquors to be delivered
in the future, in a prohibited district, is not, in itself, an
indictable offense, under the law of Pennsylvania.  Such
a contract is, however, unlawful and cannot be enforced.
If it is consummated, by delivery of the goods, the man
who made the executory contract is, equally with the
man who makes the delivery, subject to indictment, con-
viction and punishment, under our law, for selling liquor
without a license.   It is proper here to observe that the
following sentence appears in the opinion of Mr. Justice
PITNEY, who spoke for the Supreme Court of the United
States, in Rossi v. Pennsylvania, 238 U. S. 62, to wit:
"And it is admitted that by the Pennsylvania decisions
the act of taking orders for future delivery is not pun-
ishable under the statute cited, or any other, and that it
is not the making of an executory contract but the ex-
ecuted sale that is punishable."  The learned counsel
who represented the State of Pennsylvania in that case

did not, in the admission above quoted, fully state the law of Pennsylvania, upon this subject. The making, by an agent, of an executory contract for the sale of liquors to be delivered in the future within a prohibited district, becomes an indictable offense the moment the contract is consummated by the delivery of the liquors, whether that delivery be made by the agent who made the contract, or his principal who accepted and acted upon the contract. The decision of the Supreme Court of Pennsylvania in Garbracht v. Pennsylvania, 96 Pa. 449, seems to have been cited to the Supreme Court of the United States, as sustaining the admission above quoted. The history of that particular case, when carefully examined, discloses that the above quoted admission, as to the law of Pennsylvania, is subject to qualification. The Garbracht case was twice considered by the Supreme Court of Pennsylvania. Garbracht had been indicted and convicted of selling liquor without a license in the County of Mercer. It appeared from the evidence that he was an agent of a wholesale liquor dealer who had a license to sell liquors in Erie County, and, as such agent, he had solicited orders for liquor in Mercer County and transmitted such orders to his principal at Erie, who filled the orders by delivering the goods to a common carrier, but it did not appear that Garbracht had made any contract to deliver the goods in Mercer County, or that there were circumstances from which such a contract could be inferred. The trial court held that the evidence that the defendant had solicited orders in Mercer County was sufficient to warrant a conviction, and the defendant was convicted and sentenced, whereupon he appealed. The Supreme Court, in passing upon the question thus presented, held that in the absence of evidence that the defendant had contracted that the liquor should be delivered in Mercer County and that his agreement was carried out, either by himself or his principal, the conviction could not be sustained, and the case was remanded for a new trial. That was the decision which was re-

ported in 96 Pa. 449, and cited to the Supreme Court of the United States, as above stated. Garbracht was again tried and at the second trial the Commonwealth produced evidence sufficient to warrant a finding that the defendant, when he took the orders, had contracted that the liquors should be delivered to the purchasers in Mercer County, and that his principal had carried out that contract and delivered the liquors. The trial court instructed the jury that if the contract was so made by the defendant, and executed by his principal that it was their duty to find a verdict of guilty, and the defendant was convicted and sentenced. He then took a second appeal and the Supreme Court held that the instructions given by the trial judge were correct and sustained the conviction, which decision is reported in 1st Pennypacker 471. This particular question was really not involved in the decision of the case of Rossi v. Pennsylvania, supra, by the Supreme Court of the United States, for that decision was based upon the ground that the sales in that case involved interstate commerce, and, under the provisions of the Wilson Act, not subject to the laws of the State of Pennsylvania. The question is, however, squarely raised by the appellant in this case and we have deemed it necessary to show that it has been definitely ruled against the contention of the defendant by the decisions of the court of last resort in Pennsylvania. If the testimony of the witnesses produced by the Commonwealth was true the appellant had contracted to deliver the liquors at the residences of the purchasers in Somerset County, Pennsylvania, and that contract was consummated by the actual delivery of the goods as provided for by its covenants. If the testimony of William Meise, the manager of the Cumberland Branch of the brewing company, was true, the delivery of the liquors was actually made in Somerset County, by an employee of the brewing company, after the goods had been carried by the railroad company into the State of Pennsylvania. The delivery of the liquors, after their arrival in

Pennsylvania, was the last step necessary to complete the sale. That this involved a violation of the law of Pennsylvania is a question free from any doubt.

The question whether these transactions were exempt from the operation of the law of the State of Pennsylvania and within the protection of interstate commerce, as regulated by valid congressional legislation, has, in our opinion, been determined by the recent decisions of the Supreme Court of the United States in the cases of The James Clark Distilling Co. v. Western Maryland Railway Co. and the State of West Virginia and the same plaintiff against The American Express Co. and the State of West Virginia, not yet reported. Those decisions involved the consideration and construction of the Webb-Kenyon Act of Congress of March 1, 1913, c. 90, 37 Stat. 699, the provisions of which are as follows: "An act divesting intoxicating liquors of their interstate character in certain cases." ...... "That the shipment or transportation, in any manner or by any means whatsoever, of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one state, ...... into another state ...... which said spirituous, vinous, malted, fermented, or other intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, ...... in violation of any law of such state, ...... is hereby prohibited." The Supreme Court held this act to be a valid exercise of the power of congress to regulate interstate commerce. The court in construing the statute said: "That act did not simply forbid the introduction of liquor into a state for a prohibited use, but took the protection of interstate commerce away from all receipt and possession of liquor prohibited by state law." "The movement of liquor in interstate commerce and the receipt and possession and right to sell prohibited by the state law having been in express terms divested by the Webb-Kenyon Act of their interstate commerce character, it follows that if that act was within the power of congress to adopt, there is no

possible reason for holding that to enforce the prohibitions of the State law would conflict with the commerce clause of the Constitution." Applying these principles to the facts in the present case; the liquors in question were brought into the State of Pennsylvania and were by the vendor delivered to the purchaser, and this delivery constituted a sale, within the State of Pennsylvania. The liquors were brought, or caused to be brought, into the State and were by the vendor used in a manner prohibited by the laws of the State of Pennsylvania, that is, delivered to the purchaser in pursuance of a contract of sale. The brewing company, a corporation, and its employees were persons interested in the liquor and the delivery thereof, and it was their intention to complete the sale, by delivering the liquors, in Somerset County, Pennsylvania, and the transactions were clearly within the letter and spirit of the Webb-Kenyon Act as interpreted by the Supreme Court of the United States.

This leaves to be considered the third question, whether the instructions of the court below to the jury were erroneous. The particular part of the charge which is the subject of complaint was as follows: "If you believe the defendant's own testimony as he gave it on the stand, it will be your duty to convict him." This was excepted to and is here assigned for error. There are undoubtedly cases in which it is proper for the judge to instruct the jury that if they believe the evidence of a defendant it is their duty to convict him. It is, however, manifest that in order to justify such an instruction it must appear that the testimony of the defendant, if true, establishes every fact essential to warrant a conviction. We have carefully considered the testimony of this appellant, as delivered at his trial, and are convinced that the memory of the learned judge of the court below, in so far as it related to the testimony of this witness, did not serve him well. The defendant testified positively that he had not made any contract, on behalf of his prin-

cipal or any other person, to deliver any liquors in Somerset County or the State of Pennsylvania. He testified that he was without authority to make such contracts and he never did make one, and that he knew nothing about how the goods were delivered. If his testimony had been all that there was in the case, then the facts would have been such as appeared at the first trial of Commonwealth v. Garbracht, which were passed upon by the Supreme Court and reported in 96 Pa. 449, and were held by that court insufficient to sustain a conviction. In order to sustain a conviction in the present case it was necessary that the jury believe the testimony of some witness other than this appellant. The first specification of error must, for these reasons, be sustained. The court also fell into error in refusing to affirm the point submitted by the defendant requesting the court to charge: "That the defendant is entitled to the benefit of any reasonable doubt arising out of the evidence." This ruling is made the subject of the 14th specification of error. The refusal of the court to affirm this point was not cured by anything which the court said in the general charge, for the court said nothing to the jury upon that subject. This specification of error must, therefore, be sustained.

The judgment is reversed and the record is remitted to the court below with a venire facias de novo.