## Commonwealth *v.* Gallo, Appellant.

*Liquor laws—Selling without a license—Beer—Delivery—Principal and agent—Criminal law—Challenge of jury—Arrest of judgment.*

Where a person has been in due form of law indicted for selling liquor without a license, and thereafter when the case is called, submits a number of reasons for quashing the indictment without alleging any cause for challenging the grand jury, and subsequently, and after a failure to appear for trial, a forfeiture of recognizance, a renewal of recognizance, and a trial and conviction, without at any time alleging grounds for challenge, he cannot complain, as a ground for arresting the judgment, that he was deprived of a right to challenge the grand jury for cause.

An agent of a brewing company who exceeds his orders and sells and delivers beer directly to customers, may be convicted of selling liquor without a license, although the method of sale adopted by the company might exempt it from criminal liability.

Although orders for beer given to a brewing company in another county, may on their face appear to be completed contracts by delivery at the brewery, yet if other evidence in the case, shows that

they were in fact executory contracts, and that the sale was not to be completed until the beer was delivered to the purchasers at their homes, an agent of the company who takes orders, receives money payments, and delivers the beer at the houses of the purchasers, may be convicted of selling liquor without a license.

Argued April 12, 1918.  Appeal, No. 92, April T., 1918, by defendant, from judgment of Q. S. Indiana Co., March Sessions, 1917, No. 2, on verdict of guilty in case of Commonwealth v. Sam Gallo.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.  Affirmed.

Indictment for selling liquor without a license.  Before LANGHAM, J.

At the trial the jury returned a verdict of guilty.

On a motion for arrest of judgment LANGHAM, J., filed the following opinion:

Reasons 1 to 6, inclusive, are to the effect that the preliminary hearing before the justice of the peace, the taking of defendant's recognizance and the return of the recognizance to the Quarter Sessions Court, the consideration of the charges and the finding of the bill of indictment by the grand jury all took place upon one and the same day, to wit, March 7, 1917, the said grand jury having been summoned, impanelled, sworn and having commenced its duties prior to said date, March 7, 1917.

We recognize that every defendant has the right to challenge the array of grand jurors for the purpose of correcting irregularities in the summoning thereof, and the right to challenge the personnel of the grand jury for cause.  These are common law rights, and are guaranteed by the Constitution.

In the case at bar how was the defendant deprived of any common law or guaranteed right of challenge   An information was made against him by the sheriff of Indiana County on February 17, 1917.  He was arrested on February 23, 1917, and gave bail for his appearance at

a hearing to be held March 7, 1917. He was represented by counsel at the preliminary hearing before the justice of the peace when and where he was held for answer to the Court of Quarter Sessions giving his recognizance for his appearance at the March sessions of said court. No protest or objection was made to the recognizance. In keeping with the transcript of the justice and recognizance the district attorney prepared a bill of indictment, and same day, March 7, 1917, presented the case to the grand jury then in session, upon which a true bill was found. On March 16, 1917, the date set for trial, defendant's attorneys moved to quash the indictment, setting forth substantially the same reasons embraced from 1 to 6, inclusive, in this motion for arrest of judgment, but did not allege any cause for challenge to the array or cause for challenge to any individual member of the grand jury. The case was called for trial on March 16th, and the defendant failed to appear, whereupon his recognizance was forfeited. Subsequently, on March 20th, the defendant appeared and renewed his recognizance for appearance at the June sessions, at which time the case was continued, and the recognizance renewed for September sessions, at which time the case was tried. From the time of the hearing before the magistrate to the present hour the defendant has been ably represented by counsel, and at no time, before trial or since, has there even been an intimation that any cause existed for challenge to the grand jury as a whole or in part upon any grounds whatever. Just because the grand jury had been sworn on Monday, March 5th, prior to the hearing before the justice, and presentation to the grand jury on Wednesday, March 7th, did not preclude the defendant from his right of challenge if any cause existed. It is true if cause for challenge to the array, or of one or more individual members of the grand jury, is known before the grand jury is sworn, the right of challenge ought to be exercised before the jury is sworn. It would be the more orderly practice to do so. But if cause develops after the grand jury is

sworn the defendant should not be deprived of his constitutional rights simply because the grand jury was sworn before the defendant learned of any cause for challenge. In this case no application was made to the court to challenge the array of grand jurors or any member thereof during the sessions of the grand jury, and no allegations of cause for challenge has been made at any stage of the proceedings. We say that defendant's right of challenge was not abridged or denied.

Counsel for defendant argues and urges that the indictment is illegal because the Act of May 22, 1722 (3, Statutes at Large, 298), requires every recognizance to be certified into the court where the offense is triable at the court to be holden "Next after the taking thereof."

In this case the recognizance certified by the magistrate to the Court of Quarter Sessions required the appearance of the defendant at the "March Term of Court." The grand jury for the March sessions was in session at the time the recognizance was signed by the defendant and his bondsman. It seems to us that the district attorney could not do otherwise than present the bill to the grand jury then in session, and if objection was wont to be made it should have been made at the time of the execution of the recognizance. The defendant was represented by counsel at the time the recognizance was taken and certified. Was this defect, if it is a defect at all, not cured by the failure of the defendant to protest at that time? The only injury or prejudice that could result to the defendant on account of the recognizance being taken and certified as it was taken and certified would be to deprive him of his right of challenge for cause to the array of grand jurors or to some member thereof, and we think he was not thereby deprived. Can it be said that where a crime is charged, and preliminary hearing had thereon during the period that the grand jury is in session that the defendant must wait until the meeting of a subsequent grand jury before his case can be investigated by a grand jury? The statute referred to

must certainly be construed in the light of an expeditious administration of justice. We fail to see where the rights of the defendant in this case have been prejudiced as contended.

Reasons 7 to 16, inclusive, can hardly be said to be legal reasons in arrest of judgment. At all events we have considered said reasons in our opinion refusing the motion for a new trial in this case.

And now, November 5, 1917, this case came on to be heard, and after argument of counsel, upon due consideration motion in arrest of judgment is refused.

The facts of the case appear by the opinion of the Superior Court.

*Errors assigned* were (1-36) refusal to arrest judgment and various instructions.

*John W. McFadyen,* with him *W. M. Mahan* and *A. M. Neeper,* for appellant.—The defendant in every criminal case has the right to challenge the array of grand jurors, for the purpose of correcting irregularities in the summoning thereof, and the further right to challenge the personnel of the grand jury for cause or favor: Brown v. Commonwealth, 73 Pa. 321; In re Wilson, 140 U. S. 575; Rolland v. Commonwealth, 82 Pa. 306; Com. v. Clark, 2 Browne, 323; Com. v. Kahle, 2 Kulp 329; Com. v. Mikulewicz, 17 Luzerne 552.

Appellant contends that the facts and circumstances surrounding the taking of the orders; and that they show, and can only be held to show, sales of beer made in strict compliance with the liquor laws of the Commonwealth, as adjudicated by the appellate courts: Commonwealth v. Guinzburg, 46 Pa. Superior Ct. 488; Commonwealth v. Munk, 1 Pa. Superior Ct. 479; Commonwealth v. Fleming, 130 Pa. 138; Commonwealth v. Hess, 148 Pa. 98.

*Samuel Cunningham* and *Geo. J. Feit,* with them *Wm. N. Liggett,* District Attorney, for appellee.—The defendant has no inherent right to have his case passed upon by a grand jury impanelled and sworn after his arrest and binding over. He may be indicted upon a presentment, before he is even arrested: Winder v. Sheriff, 2 Clark 26; Commonwealth v. English, 11 Philadelphia 439.

There was overwhelming evidence to support the finding by the jury that the contract entered into between Sam Gallo and the purchasers of the beer was a contract to deliver the beer in Indiana County.

The defendant was the agent of a corporation, if he exceeded the powers conferred upon him by the corporation that might exempt his principal from liability but it could not excuse the agent for his own criminal acts: Commonwealth v. Hull, 65 Pa. Superior Ct. 450; Star Brewing Co.'s License, 43 Pa. Superior Ct. 577.

The writing is not the contract, but is no more than evidence of what the parties intended the contract to be: Com. v. Coshey, 58 Pa. Superior Ct. 197; Com. v. Holstein, 132 Pa. 357.

OPINION BY ORLADY, P. J., January 3, 1919:

The defendant was convicted of selling liquor without a license, and the record presents for our consideration thirty-six assignments of error, but three of which are necessary for the disposition of this appeal.

An information was made by the sheriff of Indiana County, under which the defendant was arrested and gave bail for his appearance at a hearing before a justice, to be held March 7, 1917. He was represented by counsel at this hearing, and when held to answer at the Court of Quarter Sessions, entered into his recognizance for his appearance at the March session of that court. The transcript of the justice with the recognizance, was promptly returned to the district attorney, who prepared a bill of indictment and the same day presented it to the

grand jury, which was then in session, and a true bill was returned.  The case was called for trial on March 16th, when the defendant's attorney moved to quash the indictment, and set forth a number of reasons, but in none of which was there any suggestion of a cause for challenge to the array, or to any individual member of the grand jury.  When called for trial at the March session, the defendant did not appear and his recognizance was forfeited, but subsequently on March 20th, he appeared and renewed his recognizance for his appearance at the June session, when the cause was again continued, and a new recognizance entered for his appearance at the September session, at which the case was tried and the defendant found guilty.

The assignments of error affecting the integrity of the indictment, and the regularity of the proceedings leading up to its finding, do not comply with our rules, as is apparent from their inspection, and in the light of the facts of the case might properly be regarded as frivolous.  The procedure adopted in the court below is that generally followed in such cases, and the appellant does not complain that he was in any way injured by having the indictment presented to the March grand jury.  Had he done so, it would doubtless have been considered by the court, but he volunteered to renew his recognizance without assigning any cause for challenge, and raises the same question in his motion for arrest of judgment, which is fully considered and properly disposed of by the trial judge in an opinion filed.  At most, the error was formal and not substantial.  The court below had before it such evidence as satisfied its conscience that the law had been complied with in all important particulars.

The relation between the Loyalhanna Brewery, the New Kensington Brewery and the Independent Brewing Company of Pittsburgh, with this defendant, is not material in disposing of the defendant's guilt in the transactions developed on the trial.  The brewing companies

appear to have carefully safeguarded the sales they made by providing for a strict compliance with the law on that subject. The jury was warranted in finding that the defendant ignored the instructions given to him by his employers and made the sales direct, as charged in the indictment, to a number of persons, and his effort to protect his personal sales under the guise of following instructions received from the brewing companies, was so colorable as to be considered a mere device of his own,— so that without regard to the relation of the brewing companies to the several transactions, the jury was warranted in finding that this defendant was guilty.

As stated in Star Brewing Company's License, 43 Pa. Superior Ct. 577, (p. 580), "It is not necessary at this late day that we should discuss at length the fundamental principles that become operative in cases of sales of personal property. An executory contract of sale does not become an executed one until there has been a delivery, actual or constructive, because delivery is an essential element in the sale of personal property. The time, the place, the manner of delivery just like the purchase-price, the time and mode of its payment, are matters of contract between buyer and seller. Where the contract, in so far as it has been expressed in words, is silent on the subject of delivery, then the courts must resort to certain rules of construction, to the acts of the parties, and to such other evidence as may be available in order to ascertain the intention and meaning of the contracting parties as to this essential matter."

The defendant, although he was an agent of the corporation, if he exceeded the powers conferred upon him by the corporation that might exempt the principals from liability, would not excuse the agent for his own criminal acts, Commonwealth v. Hull, 65 Pa. Superior Ct. 450, and this phase of the case was made clear by the trial judge in his charge to the jury. "If you find that Sam Gallo, the defendant, did nothing more than solicit orders for the beer, and collect and remit the money there-

for, including freight and express, and by the order so taken had nothing to do with any arrangement for its delivery, and that there was no combination between the Independent Brewing Company and the Tri-County Express Company in a general scheme or plan to make sales and deliveries of beer in this county in a manner to evade the law, then you should return a verdict of 'not guilty.' "

The carefully prepared orders of the brewing company to relieve them of liability were printed in English and Italian. They were signed by the prospective purchaser or by wives, children, or boarders in their houses. The money was paid to the defendant. The delivery was promised by the defendant and made at the homes of the purchasers, many of whom could not read the orders, and did not know the contents of the papers or where the beer came from, and the writing taken alone, could not be considered a completed contract. While in terms the writing appeared to be complete, under the facts developed on the trial it was but an executory contract, and the sale was not completed by the signing of the order until the goods were delivered at the destination. Delivery, actual or constructive, is necessary to complete the sale, and the manner of the delivery is a proper subject of agreement between the buyer and seller. What is the construction to be placed on the transaction is a question for the jury, unless in writing and unambiguous: Commonwealth v. Guinzburg, 46 Pa. Superior Ct. 488. The testimony in this case is undisputed, and the facts are substantially admitted by the defendant, that the written orders were but matters of form and not of substance, so that the contracts between the defendant and the many purchasers were rightly to be determined by the jury under all the facts of the case. Practically, the only question for determination by the jury was, as to whether or not the defendant consummated the sales of liquor, by effecting delivery of it, and in arriving at its conclusion the jury might well treat the highly technical contract, the consignment by a special express company,

the confusion of labels in suppressing the name of the actual consignee, were resorted to by this defendant solely to effect the sale direct by him to the purchaser.

As we said in Commonwealth v. Coshey, 58 Pa. Superior Ct. 197, "Despite the statement in the order that, 'it constitutes the entire and exclusive contract for the sale of beer herein mentioned,' the place of sale and delivery is to be determined by the conduct of the parties to the contract. The writing is not the contract, but is no more than evidence of what the parties intended the contract to be. The words used are not controlling, if the parties by their acts contradict or ignore them. If the jury would find that it was a mere trick or artifice to formally comply with the law yet evade it, the words, however pertinent to the subject-matter would not protect an offender."

The uncontradicted evidence shows that kegs and cases of beer were delivered upon orders taken by Gallo and labeled at the brewery by a tag being so folded as to conceal the name of the real purchaser, and bearing on its exposed face the name of an express company. No bill of lading or receipt was issued to the purchaser, and when the bulk or community shipment reached Indiana County the outer tag was removed and the name of the real purchaser was then exposed. It was an elaborate system, but clumsily executed. "The technical declaration in regard to the marking of the package to indicate the passing of title at the brewery, and delivery by common carrier as the absolute and specific property of the purchaser might have considerable weight under ordinary circumstances, but in the case of prosecution of the seller for violation of our liquor laws these refinements and definitions are rightly examined with special care to ascertain whether they are made to literally comply with our statutes or are an ingenious device to evade them": Commonwealth v. Coshey, 58 Pa. Superior Ct. 197, vide page 208. It would serve no good purpose to take up and discuss separately the thirty-six assign-

ments of error which are based on fifty reasons for a new trial, and sixteen reasons in support of the motion for arrest of judgment.

The case was carefully tried and the defendant's interests were safeguarded in a plain yet thorough charge. The necessity for strict compliance with the law regulating sales was carefully explained. The jury was instructed "To know at what point a sale of property is completed, you must determine when and where title passed and delivery was made, and this must depend upon the intention of the parties as evidenced by the contract between them, and the circumstances surrounding its making. In order to arrive at a proper verdict you should investigate this plan of procedure along with all other phases of the case. You must stop and inquire whether this is an adroit device to make large or small shipments of beer into counties other than the county where the brewery is licensed, and thus evade the law."

After a careful review of the whole record we find no reversible error. The judgment is affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time this appeal was made a supersedeas.