## Commonwealth v. Magid and Dickstein.

*Practice, Q. S.—Terms of court—Holding defendant to present term.*

1. In Pennsylvania, since the original organization of the courts under the Act of May 22, 1722, 1 Penna. Laws, 131, it has been the practice to hold a defendant who is unable to enter bail to the present term if the grand jury are still in session.

2. A mistake as to the term at which a bill of indictment should be found may be waived by the defendant.

3. By entering bail for the present term, the defendant waives any right to object to being indicted at that term.

4. *Semble.* Any defendant, whether he enters bail or not, may be held to the present term.

Motion to quash indictment. Q. S. Phila. Co., Feb. Sess., 1927, No. 875.

*John A. Boyle*, Assistant District Attorney, and *Charles Edwin Fox*, District Attorney, for Commonwealth.

*Edward A. Kelly*, for defendants.

TAULANE, J., May 18, 1927.—The defendants were indicted for manufacturing and selling obscene pictures in violation of the Act of May 12, 1897, P. L. 63. They filed a motion to quash the bill of indictment, which the court dismissed.

The motion to quash raised the question whether a defendant may be held to the present term of the Court of Quarter Sessions. The defendants were held in bail on Feb. 19, 1927, for the present, or February, 1927, term of court, and the bill of indictment was found at that term. Magid entered bail for the February, 1927, term, but Dickstein was committed and in custody at the time of trial.

The terms of the Court of Quarter Sessions of Philadelphia County are monthly, beginning on the first Monday of each month (Act of March 13, 1867, P. L. 420), and during each term a new grand jury sit continuously.

The practice in England and the Federal courts, and in Pennsylvania since the original organization of the courts in 1722, has always been to hold to the present term a defendant who is unable to enter bail, if the grand jury are still in session. The reason for the practice is the speedy delivery of the jails. If the procedure were otherwise, a defendant committed on the second day of the term in a county where the terms are quarterly would be obliged to languish in jail at least three months before his case could come before the grand jury.

Prisoners in Philadelphia County are generally indicted and tried within ten days from commitment, which could not be done if their cases had to await the action of the grand jury at the next term.

The form of commitment, where a defendant is unable to secure bail, is that he be committed, not to await the action of the grand jury at the next term, but "until he is delivered by due course of law:" 2 Blackstone's Commentaries, Book 4, page 300, and Sadler's Criminal Procedure, 590.

There is not the slightest foundation for the contention that Dickstein was improperly indicted at the February Term, and the like contention by Magid rests on no more solid ground. Any mistake as to the term at which a bill of indictment should be found may be waived by the defendant (Com. *v.* Hooper, 15 Pa. Superior Ct. 227; Com. *v.* Gallo, 70 Pa. Superior Ct. 548, and Com. *v.* Haggerty, 3 Brewester, 285). By entering bail for the present term, Magid waived any right to object to being indicted at that term (Com. *v.* Dingman, 26 Pa. Superior Ct. 615; Com. *v.* Hans, 68 Pa. Superior Ct. 275; Com. *v.* Mazarella, 86 Pa. Superior Ct. 382, and Com. *v.* Lumadne, 15 Dist.

Commonwealth v. Magid and Dickstein.

R. 707). While it is unnecessary at this time to decide the question, we are quite clear that any defendant, whether he enters bail or not, may be held to the present term.

There is no authority at common law (1 Chitty on Criminal Law, 315; 2 Hale's Pleas of the Crown, 156, and Com. v. Gee, 6 Cushing (Mass.), 174, 179) or any statute in this State which requires a defendant who is able to enter bail to be held to the next term.

All the statutes regulating the filing of transcripts and recognizances are reviewed at length by Beitler, J., In re Magistrates' Returns, 11 Dist. R. 140, and none of them directs or suggests that a defendant must be held to the next term.

The Act of May 8, 1854, P. L. 678, directs the magistrates to return a recognizance at least ten days before the commencement of the term to which it is returnable, and where a recognizance is entered into less than ten days before the commencement of the term to which it is returnable, it must be returned in the manner provided by law.

Hence, a recognizance taken for the present term should be returned in time to present a bill of indictment to the grand jury, if they are still in session (Com. v. Rice, 6 Lacka. Jurist, 286). A magistrate, however, should not hold to the present term if there be not sufficient time to present a bill at that term.

The Act of June 11, 1885, P. L. 110, does no more than fix the time for filing transcripts, and contains nothing bearing on the question here involved.

It is a practice, and nothing more, to hold defendants on bail to the next term, but this is not done where some public necessity or exigency requires holding to the present term; for instance, the running of the statute of limitations (Com. v. Carlucci, 20 Dist. R. 543).

The only semblance of authority for the notion that a defendant must be held to the next term is the Statute of 2 and 3 Philip and Mary, chap. 10, reported by the judges of the Supreme Court to be in force in this State (3 Binney, 599, Appendix, and Roberts's Digest of English Statutes, 80). It is unnecessary to consider the Statute of Philip and Mary, since the 4th section of the Act of May 22, 1722 (1 Pennsylvania Laws, 131), establishing courts of judicature, re-enacts in substance that statute, so far as it regulates returning recognizances. Section 4 provides: "That the said justices, and every of them, shall have full power and authority, in or out of sessions, to take all manner of recognizances and obligations as any justices of the peace of Great Britain may, can or usually do. . . . And all recognizances for the peace, behaviour, or for appearance, which shall be taken by any of the said justices out of sessions shall be certified into their said General Sessions of the Peace, to be holden next after the taking thereof. And every recognizance, taken before any of them, for suspicions of any manner of felony, or other crime, not triable in the said Court of Quarter Sessions of the Peace and Gaol Delivery, shall be certified before the said Justices of the Supreme Court of Oyer and Terminer at their next succeeding court to be holden next after the taking thereof."

The Act of 1722 provides, in section 2, that the Courts of Quarter Sessions shall be held at four stated times a year in each county, and section 18 provides that the judges of the Supreme Court shall hold a Court of Oyer and Terminer from time to time to deliver the jails.

It has been the custom for ages in England to hold two Courts of Oyer and Terminer in each county in every year (2 Blackstone's Commentaries, Book 4, page 269, and 4 Stephen's Commentaries on the Law of England (18th ed.),

239). No doubt the judges of the Supreme Court in 1722 followed the English practice and held at least two Courts of Oyer and Terminer each year. At that time there were no stated terms of the Court of Oyer and Terminer, and it was not until 1834 that the legislature directed that the Court of Oyer and Terminer should be held quarterly at the same times as the Court of Quarter Sessions.

It will be observed that the Act of 1722 directs that a recognizance for appearance at the Court of Quarter Sessions, when taken out of sessions, shall be returned to the Court of Quarter Sessions "to be holden next after the taking thereof." But if a recognizance is taken while the court is in session, it is clear that the recognizance should be returned at that session. And if the court be not in session, the act does not direct that the recognizance shall be returned to the next term, but only to the court "to be holden next after the taking thereof," which may well be a sitting of the court held before the next term. Recognizances for appearance at the Court of Oyer and Terminer are directed to be returned, not to the next term—for there were no terms—but to the "next succeeding court to be holden next after the taking thereof." The words "next to be holden" are used in the sense of nearest, and comprehend a court in session and not necessarily a court at the next term.

A like interpretation of substantially similar words in section 60 of the Act of March 31, 1860, P. L. 398, regulating the destruction of gambling devices, was adopted by Judge Edwards, In re Destruction of Gambling Devices, 19 Lacka. Jurist, 200.

There is nothing in the Act of 1722 which prevents the holding of any defendant to the present term.

Mr. Justice Sergeant had no doubt that a defendant could be held for the present term, for he said in Com. v. Sheriff, 7 W. & S. 108: "It cannot be assumed that in no case whatever can a party be charged, committed and tried during the sessions of the court; for this has frequently occurred, and cases may easily be supposed in which it would be expedient and necessary."

Judge Hargest reached the same conclusion in Com. v. Kephart, 26 Dauphin Co. Reps. 15, where he discusses the question in a learned and satisfactory opinion.

In Com. v. Berkman, 27 Dist. R. 930, the defendant was held to the term following the next term, and he moved to quash the indictment. Judge Landis refused to quash the indictment because the defendant had notice of the term at which the indictment would be presented, and he had no right to insist that he be held to the next term.

In Com. v. Ehrlich, 21 Luzerne Legal Reg. 65, the court refused to quash the indictment because the defendant was held to the present term.

It is of no consequence to a defendant whether he be held for the present or next term, for in either case he is advised what grand jury will hear his case.

Generally, a challenge to the array of the grand jury must be made before they are sworn (Com. v. Clark, 2 Browne, 323), and it might be urged that a defendant held to the present term would be deprived of his right of challenge; but he would be no more deprived of that right than a defendant who is unable to secure bail, or a defendant who is indicted on a district attorney's bill with leave of court, or a defendant who is indicted for murder on a coroner's return.

Challenging the array of the grand jury, or the grand jurors individually, is practically unknown in Philadelphia County, and for the last twenty-five

Commonwealth v. Magid and Dickstein.

years there has been no such challenge to the personal knowledge of the court.

Should a case occur where a defendant has grounds for challenge, his rights would be amply protected by permitting him at the first opportunity to move to quash the indictment, and if his challenge be sustained, to quash the indictment.

This is the practice in the Federal courts as well as in some of the state courts (State v. Corrigan, 139 Fed. Repr. 758; United States v. Gale, 109 U. S. 65; Carter v. Texas, 177 U. S. 442; Lang v. State, 209 U. S. 467; United States v. Powlowski, 270 Fed. Repr. 285; United States v. Thompson, 251 U. S. 407) ; it is a sensible practice, and was approved by the late Judge Rice, a most learned and enlightened judge, in Com. v. Smith, 4 Pa. Superior Ct. 1, and by Judge Hargest, in Com. v. Kephart, 26 Dauphin Co. Reps. 15.

We have been unable to find any case where a bill was quashed because the defendant was held to the present term, and it would be short-sighted to introduce at this time a new technicality, without merit or common sense to recommend it, for no other reason than to delay criminal trials and embarrass the prosecution.

The case of Com. v. Brown, 12 Dist. R. 316, is much relied upon by the defendants, but that case has no bearing on the question here involved. In that case, the indictment was not presented at the term to which the defendant was held, but at a later term without notice. The Brown case is not followed by the Federal courts: United States v. Thompson, 251 U. S. 407; United States v. Powlowski, 270 Fed. Repr. 285.

There is no merit in the defendants' contention, and we are satisfied that the court reached a correct conclusion in refusing to quash the indictment.